IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CR. NO. 20-121-1 (CJN) |
| | : | |
| v. | : | |
| | : | |
| TAVONTE WILLIAMS, | : | |
| Defendant. | : | |

## MOTION TO SEVER DEFENDANTS' TRIALS UNDER RULE 14

Defendant Tavonte Williams hereby moves this Court to sever his trial from co-Defendant Theodore Douglas' trial pursuant to Federal Rule of Criminal Procedure 14(a). Mr. Douglas is a necessary and exculpatory witness who has agreed to testify if Mr. Williams is tried subsequent to Mr. Douglas. In addition, in a joint trial the spill-over effect from the damning and vivid evidence against Mr. Douglas, much of which is not admissible against Mr. Williams, would be highly prejudicial and improper. Balancing all interests in this case where strong reasons for severance exists on one side, and judicial administration and economy will not be strained by conducting separate one-day trials, the Court should sever Mr. Williams from Mr. Douglas.

### Background

On July 21, 2020, a grand jury charged Mr. Williams and Mr. Douglas each with one count of unlawful possession of a firearm and ammunition under 18 U.S.C. § 922(g)(1). Since the date of their arrest in this case, April 22, 2020, Mr. Williams and Mr. Douglas have been joined as co-defendants.

1

The government's evidence against Mr. Williams in this case is minimal and inaccurate, and he maintains that he is innocent of the charge against him. The case involves an alleged exchange between Mr. Williams and Mr. Douglas where, according to the government's sole witness, Mr. Williams handed a backpack to Mr. Douglas, who then "hurriedly" concealed the backpack under his outer coat and handed cash to Mr. Williams with a handshake. The lone government witness to these events is an undercover officer ("UC") whose location (and thus distance and quality of vantage) and duration of viewing during the critical moments of the alleged interaction between the defendants have not been disclosed. Within moments after seeing this alleged exchange, the UC radioed other officers who arrived almost immediately on the scene. The officers stopped Mr. Douglas, cuffed him, and one officer squeezed the back of Mr. Douglas' outer coat in an attempt to feel what was underneath. The officer asked Mr. Douglas if he had any knives or weapons on him. Mr. Douglas stated that he had a glasses case. The squeezing officer asked if he could check the bag, and when Mr. Douglas again stated it was a glasses case, the squeezing officer stated, "I don't know if that's glasses, man." Later, the officer would claim that he felt a gun through the coat, sweatshirt, and backpack separating his hand from the objects inside. The police conducted a search of the backpack. In that search the officers found a gun and, according to the squeezing officer's testimony at Mr. Douglas' preliminary hearing, they also found a glasses case.

After they stopped Mr. Douglas, officers stopped and eventually searched Mr. Williams, whom the UC identified as the person who handed Mr. Douglas the backpack. Despite the alleged "transaction" having just occurred, the police found no cash on Mr. Williams. They did find, however, that Mr. Williams was in possession of Mr. Douglas' phone.

2

Mr. Williams maintains that he did interact with Mr. Douglas that day, but the evidence will show that it was not some kind of pre-planned exchange or sale, that the interaction in fact involved borrowing Mr. Douglas' phone which, unlike the non-existent cash in this case, Mr. Williams <u>did</u> have on him when searched, and that Mr. Williams had nothing to do with the backpack Mr. Douglas was found wearing.  The government has no evidence tying Mr. Williams to the backpack or the gun other than the UC's testimony, which, not only is inaccurate, it does nothing to establish Mr. Williams knew what was in the backpack.[1]  Further, Mr. Douglas' statement about his glasses case, which the government will undoubtedly offer against Mr. Douglas to show his knowledge of the backpack's contents, belies the government's theory that Mr. Williams, let alone anyone else other than Mr. Douglas, had any knowledge of the contents of the backpack.

It was clear from the preliminary hearings that the government intends to cover the holes in its case by, among other things, asserting that after the UC saw the exchange he took his eyes off of the subjects.  According to the government, during that time Mr. Williams must have walked away and, omnisciently or incredibly fortuitously, after the UC looked away and prior to the numerous other officers arriving, handed the cash off to someone else.  Thus, in a twist, the government's theory is that the UC's failure to keep his eyes on the subjects somehow helps establish Mr. Williams' guilt.[2]  The government also now seeks to tidy its case by offering a raft

---

[1]    The government has tested the gun and the magazine in this case for Mr. Williams' DNA, and while DNA was recovered from the gun and magazine, Mr. Williams was excluded as a contributor.  The government also examined the gun for fingerprints, and found none of value. In addition, numerous cameras are located in the direct vicinity of the alleged "exchange" in this case, yet the government has produced no footage showing the events.

[2]    Alternatively, the government could simply concede that it is at least possible that the UC did not see things precisely as they occurred, and therefore may have been wrong when he stated

of 404(b) evidence, almost all of which relates solely to Mr. Douglas. This evidence includes multiple photos of Mr. Douglas holding guns, shooting guns, and also messages Mr. Douglas wrote to others about purchasing guns.[3]

The UC is wrong about what he claims to have seen, but by mere virtue of characterizing the interaction as he has, Mr. Williams has been arrested, charged, and several years of his life are at risk. Overcoming the UC's incorrect version of events will be a difficult task, particularly where the charge in this case involves, by definition, a prior felony conviction on Mr. Williams' part. It is critical, therefore, for Mr. Williams to establish the innocent nature of his interaction with Mr. Douglas on the day in question, and that the interaction did not at all involve transferring the gun-bag to Mr. Douglas in exchange for cash.

Through counsel, Mr. Douglas has informed counsel for Mr. Williams that, while Mr. Douglas will not testify at a joint trial (or it seems any other trial prior to resolution of his case), Mr. Douglas has agreed to testify at a separate trial for Mr. Williams. When called at Mr. Williams' trial, Mr. Douglas will testify to at least the following facts: He knows Mr. Williams, and the two of them talked or texted occasionally, but Mr. Douglas had not talked to or texted with Mr. Williams on the day of their arrest, nor had he planned to see Mr. Williams on that day. Instead, on the day in question, Mr. Williams walked up to Mr. Douglas and asked to borrow Mr. Douglas' phone. Mr. Douglas agreed, and handed Mr. Williams the phone. Mr. Douglas will

---

that Mr. Douglas handed Mr. Williams cash, but so far that has not been the government's approach.

[3]   The only 404(b) evidence the government intends to offer against Mr. Williams is a screen shot of Mr. Williams talking to a man on some kind of video chat platform, where the other man is masked and holding a gun. The defense will oppose the introduction of this screen shot, which does not show Mr. Williams in possession of a gun or even in the same location as a person holding a gun, and is blatantly offered by the government for purely prejudicial purposes.

4

testify that he had no interaction with Mr. Williams in connection with the backpack in question, and he did not hand any cash to Mr. Williams during the time they interacted about Mr. Douglas' phone. This exculpatory testimony is critically important to Mr. Williams' defense, and will only be available to Mr. Williams if he is tried separately from, and after, Mr. Douglas.

## Law

Under Rule 14 of the Federal Rules of Criminal Procedure, "[i]f the joinder of … defendants in an indictment … or a consolidation for trial appears to prejudice a defendant…the court may … sever the defendants' trials." Fed. R. Crim. P. 14; *see United States v. Kayode*, 254 F.3d 204, 210 (D.C. Cir. 2001); *United States v. Washington*, 12 F.3d 1128, 1133 (D.C. Cir. 1994). This Court has wide discretion to grant relief under Rule 14. *Washington*, 12 F.3d at 1133 (citing *United States v. Harrison*, 931 F.2d 65, 67 (D.C. Cir. 1991). While in most cases joinder of defendants is presumptively appropriate where the evidence will be largely the same for each, severance is required "where the failure to sever denies the defendant a fair trial" (*United States v. Wright*, 783 F.2d 1091, 1095 (D.C. Cir. 1986)) or "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence" (*United States v. Carson*, 455 F.3d 336, 374 (D.C. Cir. 2006) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)).

Separate trials are warranted where one co-defendant can and would provide necessary and exculpatory testimony in the other co-defendant's trial if conducted separately. In deciding whether to sever on the basis of expected co-defendant's testimony, this Court must first evaluate whether the moving co-defendant has established a *prima facie* case for severance using four criteria: "(1) a bona fide need for the testimony; (2) the substance of the testimony; (3) the exculpatory nature and effect of the testimony; and (4) the likelihood that the co-defendant will

testify if the cases are severed." *Kayode*, 254 F.3d at 210 (quoting *United States v. Ford*, 870 F.2d 729, 731 (D.C. Cir. 1989), and citing *Washington*, 12 F.3d at 1133). If the moving co-defendant makes this *prima facie* showing, the Court must then: "(1) examine the significance of the testimony in relation to the defendant's theory of the case; (2) assess the extent of prejudice caused by the absence of the testimony; (3) consider the effects on judicial administration and economy; and (4) give weight to the timeliness of the motion." *Kayode*, 254 F.3d at 210-11 (quoting *Ford*, 870 F.2d at 731). In this balancing analysis, the court also considers "the extent to which proffered exculpatory testimony could be impeached." *Ford*, 870 F.2d at 732-33.

Separate trials are also appropriate "when the evidence against one defendant is far more damaging than the evidence against the other defendant." *United States v. Halliman*, 923 F.2d 873, 884 (D.C. Cir. 1991) (internal quotation marks omitted); *see also United States v. Richardson*, 167 F.3d 621, 624 (D.C. Cir. 1999). The D.C. Circuit has gone so far as to reverse cases where severance was denied when there were "clear disparities between the weight, quantity, or type of the evidence against the movant and against the other defendants." *Halliman*, 923 F.2d at 884; *see e.g., United States v. Sampol*, 636 F.2d 621, 645-48 (D.C. Cir. 1980); *United States v. Mardian*, 546 F.2d 973, 977-81 (D.C. Cir. 1976). The critical question in these cases is "whether a jury could reasonably compartmentalize the evidence introduced against each individual defendant." *Halliman*, 923 F.2d at 884.

As illustrated below, severance is required both because Mr. Douglas is a necessary and exculpatory witness for Mr. Williams, and because of the prejudicial disparity in the evidence against Mr. Douglas and Mr. Williams.

## Argument

### Severance is Required for Mr. Douglas to Testify at Mr. Williams' Trial

A straightforward application of the factors outlined above shows that, in fairness and to avoid substantial prejudice to Mr. Williams, he must be tried separately, after Mr. Douglas, because Mr. Douglas is a necessary exculpatory witness for Mr. Williams. As an initial matter, Mr. Williams can readily make the *prima facie* showing with regard to Mr. Douglas' testimony under the four factors outlined in *Ford* and subsequent cases:

(1) <u>Bona fide need for the testimony.</u> Mr. Douglas was found wearing a backpack with a gun inside, and allegedly the UC saw him put this backpack on and intentionally conceal it under his coat. Mr. Douglas is the only person who can explain what this backpack was, and answer such critical questions as to how he knew his glasses case was inside it. In addition, Mr. Douglas can explain precisely how Mr. Williams' interaction with him on this day was entirely innocent and not at all related to the backpack, nor to any purchase/sale transaction. Mr. Douglas can explain how he knows Mr. Williams as an acquaintance, and why it was that he handed Mr. Williams his phone, and <u>not</u> some amount of cash, as the government insists occurred. Mr. Douglas' testimony would relate directly to the critical issues and moments in the case, would be entirely exculpatory for Mr. Williams, and thus Mr. Williams has a bona fide need for this testimony in his trial.

(2) <u>Substance of the testimony.</u> The substance of the testimony, as discussed above, would include at least the following facts: Mr. Douglas knows Mr. Williams, and the two of them talked or texted occasionally, but Mr. Douglas had not talked to or texted with Mr. Williams on the day of their arrest, nor had he planned to see Mr. Williams on that day. Instead, on the day in question, Mr. Williams walked up to Mr. Douglas and asked to borrow Mr.

7

Douglas' phone. Mr. Douglas agreed, and handed Mr. Williams the phone. Mr. Douglas will testify that he had no interaction with Mr. Williams in connection with the backpack in question, and he did not hand any cash to Mr. Williams during the time they interacted about Mr. Douglas' phone.

(3) <u>Exculpatory nature and effect of the testimony.</u> Mr. Douglas' testimony in this case is completely exculpatory, and provides a rational and reasonable explanation for how it is that the UC did not at all see what he claims to have seen in terms of not only the cash, but also the backpack containing a gun.

(4) <u>Likelihood that the co-defendant will testify if the cases are severed.</u> Through counsel, Mr. Douglas has assured the undersigned that he will unequivocally testify if Mr. Williams is tried separately, and after Mr. Douglas' case is completed.

Not only has Mr. Williams made the required *prima facie* showing, the requisite balancing of interests also shows severance is appropriate and necessary in this case:

(1) <u>Significance of testimony in relation to defense theory of the case</u>. Mr. Williams' theory of the case is that he had an innocent interaction with Mr. Douglas related to borrowing Mr. Douglas' phone, and that he had nothing to do with the backpack or its contents. The government has demonstrated that it is bent on arguing Mr. Williams received cash from Mr. Douglas in some kind of sale/purchase transaction involving a gun. Mr. Williams had no cash on him when stopped and searched, but he did have Mr. Douglas' phone. Mr. Douglas' testimony is not only aligned with Mr. Williams' theory of the case, it forms the necessary basis for this theory.

(2) <u>Extent of prejudice caused by the absence of the testimony.</u> The prejudice to Mr. Williams will be substantial if he cannot call Mr. Douglas in his defense. Mr. Douglas is the

8

only person in a position to explain the existence and contents of the backpack (including answering such questions as why it is he knew a glasses case was inside).  He can also explain how he lent his phone to Mr. Williams, and that Mr. Williams had nothing to do with the backpack.  Mr. Williams could also elect to testify, but he does not have knowledge concerning the backpack, and in addition, his testimony would be subject to the instruction concerning potential bias on the part of a testifying defendant, and thus would not be as impactful on its own as it would with the complete version of events provided by Mr. Douglas' testimony.

(3)  <u>Effects on judicial administration and economy.</u> Separate trials in this case would produce little, if any, strain on judicial administration and economy.  This case involves essentially a single eyewitness and minimal physical evidence, and would take perhaps as little as one day to try in each instance.

(4)  <u>Timeliness of the motion.</u>  In terms of timeliness, this motion was lodged on the due date for pre-trial motions set by the Court, well before the Court has even set a trial date.  This request for severance is not at all like last-ditch motions in other cases where a defendant sought severance on the basis of expected co-defendant testimony on the day of trial or even mid-trial.

(5) <u>Extent to which testimony may be impeached.</u>  Other than impeachment by prior convictions, Mr. Douglas' expected testimony is not subject to any known or expected impeachment, and indeed, it aligns with the actual facts more closely than the version of events put forth by the UC in this case.

**Severance is Required to Avoid Prejudicial Disparity in Evidence**

In this case, there is a substantial difference in both the quality/weight of the evidence against each defendant, and also a substantial and damaging difference in the quantity/kinds of evidence against each defendant.

In terms of the quality and weight of evidence, Mr. Douglas was caught, on police body camera, wearing a backpack under his jacket, which contained a gun.  In addition, Mr. Douglas made statements about a glasses case being in the bag, which, it turned out, was true, indicating he knew what the bag contained.  Mr. Williams, on the other hand, was not in possession of even the cash the UC claimed Mr. Williams had received from Mr. Douglas, much less any contraband when the police videoed and searched him.

In addition, yesterday the government submitted a Motion under Federal Rule of Evidence 404(b) (Doc. No. 28), outlining a raft of evidence admissible only against Mr. Douglas, showing in vivid and damaging ways that Mr. Douglas is a person who possesses, carries, displays, and purchases guns.  None of this evidence relates to Mr. Williams at all, and the vivid nature of the poses, images, and conversations the government seeks to use against Mr. Douglas would necessarily cause a "spill-over" effect that the Court must prevent by granting severance. *See Sampol*, 636 F.3d at 643.

## Conclusion

For the reasons stated above, Mr. Williams asks that the Court sever his trial from Mr. Douglas' trial because Mr. Douglas is a necessary exculpatory witness who has agreed to testify for Mr. Williams, and because the quality and quantity of evidence against Mr. Douglas is so much greater that it will prejudice Mr. Williams if he is tried jointly with Mr. Douglas.

Dated: August 21, 2020                             Respectfully Submitted,

/s/ John Marston
John P. Marston, DC Bar No. 493012
Foley Hoag, LLP, 1717 K Street, NW
Washington, DC 20006
Telephone: 202-261-7321
Cell: 202-253-1104
Fax: 202-785-6687
jmarston@foleyhoag.com