UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
:
UNITED STATES OF AMERICA         :
                                 :
                                 :   No.: 20-cr-121-01 (CJN)
v.                               :
                                 :
TAVONTE WILLIAMS                 :
                                 :
           Defendant.            :
_____:

**GOVERNMENT'S OPPOSITON TO DEFENDANT WILLIAMS'
MOTION TO SEVER DEFENDANTS' TRIALS UNDER RULE 14**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition motion to Defendant Williams' motion to sever (ECF #29) his trial from his co-defendant, Theodore Douglas. In support of this opposition, the United States relies on the points and authorities set forth below.

Both Defendants have been charged by indictment with (1) one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of Title 18, United States Code, Section 922(g)(1).

## FACTUAL BACKGROUND

On Wednesday, April 22, 2020, at approximately 2:59 p.m., members of the Metropolitan Police Department (MPD), Narcotics and Special Investigations Division (NSID), were conducting an observation post in the 2300 block of 15th Street, Northeast, Washington, D.C. An undercover officer (UC 2268) observed an individual, later identified as Theodore Douglas, standing in the walkway between 2315 and 2317 15th Street, Northeast. An individual, later

1

identified as Tavonte Williams, approached Defendant Douglas. Defendant Williams handed Defendant Douglas a black bag with shoulder straps. Defendant Douglas appeared to UC 2268 to be in a hurry to take off the blue jacket he was wearing, put the black bag just handed to him by Defendant Williams onto his back, and then put his blue jacket on over the black bag. After this, UC 2268 observed Defendant Douglas give Defendant Williams an unknown amount of U.S. currency, completing the exchange with a handshake. UC 2268's training and experience, as well as what appeared to be Defendant Douglas's hurried attempt to remove his jacket and conceal the backpack under the jacket, led UC 2268 to believe that Defendant Douglas had just purchased something illegal from Defendant Williams.

UC 2268 alerted other officers in the area and officers moved in to stop both Defendant Williams and Defendant Douglas. Defendant Douglas was stopped by Officer Poupart and Defendant Williams was stopped by Officer Gabster. Both individuals stopped were positively identified by UC 2268 as the individuals observed exchanging the backpack and U.S. currency. Defendant Douglas was wearing a backpack under his jacket, as observed by UC 2268. Officer Poupart conducted an external frisk of the backpack worn by Defendant Douglas and immediately felt what he recognized to be a firearm. Officer Poupart opened the backpack and observed a firearm inside.

Defendant Williams and Defendant Douglas were placed under arrest. Defendant Douglas was also determined to have a bench warrant.    The firearm that was recovered from the backpack that Defendant Williams was seen handing to Defendant Douglas was determined to be a Sig Sauer, model P320, .40 caliber semiautomatic handgun with an obliterated serial number.    When the firearm was recovered, it was loaded with one (1) round in the chamber and twelve (12) rounds

in a thirteen (13) round capacity magazine.    Portions of the officers' contact with the defendants were captured on police body worn camera (BWC) video, including the discovery of the firearm. During a search incident to arrest of Defendant Williams, officers recovered two iPhones. Officers did not recover any money from Williams's person at the time of his arrest.[1]

A criminal history check of Defendant Williams confirmed that Williams has prior felony convictions in the Superior Court for the District of Columbia.   Defendant Williams was convicted in the following cases: (1) Criminal Case No. 2017-CF2-00287 for Distribution of Phencyclidine-- sentence of 20 months of imprisonment with 14 months suspended; (2) Criminal Case No. 2015-CF2-006932 for Unlawful Possession of Liquid Phencyclidine While on Release— sentence of 12 months of imprisonment with 12 months suspended.   Defendant Douglas has the following convictions, which include felony offenses from the Superior Court for the District of Columbia and the Circuit Court for Prince George's County, Maryland: (1) Criminal Case No. 2013-CF2-006028 for Unlawful Possession of a Firearm (Prior Conviction)-- sentence of 18 months of imprisonment; and (2) Criminal Case No. CT090351X for Carrying a Handgun-- sentence of 3 years of imprisonment with 3 years suspended.

Based upon searches of the two cellphones seized from Defendant Williams, one of which

---

[1] Defense counsel appears to infer in his motion that the government's theory that Defendant Williams "handed off the cash to someone else" after he received it from Douglas is somehow incredible.  ECF #29 at 3.   However, it is an indisputable fact, as established by Officer Poupart's BWC footage (*See* Governments' Opposition to Defendant Douglas' Motion to Suppress Identification (ECF #35), that Defendant Williams was standing in close proximity to Douglas at the time Douglas was stopped by police, he quickly walked off, and was ultimately located by police several minutes later standing on Montana Avenue near a truck in close proximity to two other people.  ECF #35 at 3-5.   Accordingly, the government's theory that Defendant Williams had ample opportunity to dispose of the cash prior to his arrest attributes neither "omniscience" nor "fortuity" to Defendant Williams.   *See* ECF #29 at 3.

3

was determined to be subscribed in co-defendant Douglas' name, evidence was recovered that Williams' phone (301-907-1924) was in contact with Douglas's phone (202-908-8083). Specifically, Williams' phone revealed at least three contacts with telephone number 202-908-8083 between March 2, 2020 and April 21, 2020, including a FaceTime call on April 18, 2020 and an iMessage on April 21, 2020 (the day before Williams is alleged to have transferred the firearm to Douglas). Similarly, the forensic extraction for Douglas' telephone number 202-908-8083 shows four contacts with telephone number 301-907-1924 between March 2, 2020 and April 22, 2020, including two FaceTime calls shortly before Defendant Williams and Douglas were arrested *that same day*. Finally, as set forth in the government's motion to admit evidence under Fed. R. Evid. 404(b) (ECF #28 at 18-19), in February of 2020, Defendant Williams texted to Douglas, at Douglas' request, a screen shot the shows Williams in a FaceTime call with a masked individual who is in possession of a firearm.

Defendant Williams now moves this Court to sever his trial from that of his co-defendant Theodore Douglas on the following grounds: (1) Douglas has agreed to provide testimony asserted to be exculpatory of Williams; and (2) a joint trial will prejudice Williams due to impermissible "spill-over" of "damning and vivid" evidence against Douglas that Williams asserts is not admissible against him. ECF #29 at 1. Defendant Williams' motion is without merit and should be denied. The motion fails to establish a *prima facie* case for severance based upon the need for exculpatory co-defendant testimony, and any prejudice resulting from a joint trial due to alleged disparities in the evidence between the defendants can be addressed through a limiting instruction to the jury.

**ARGUMENT**

  A. <u>Joinder of Defendants is Proper.</u>

  In co-defendant cases, Federal Rule of Criminal Procedure 8(b) controls joinder of both offenses and defendants.[2]  *United States v. Perry*, 731 F.2d 985, 989 (D.C. Cir. 1984); *United States v. Jackson*, 562 F.2d 789, 793-94 (D.C. Cir. 1977); *United States v. Wilson*, 26 F.3d 142, 153 n. 4 (D.C. Cir. 1994) ("In cases involving multiple defendants, the weight of authority in this circuit and elsewhere regards Rule 8(b) as providing the sole standard for determining the permissibility of joinder of offenses." (internal quotation marks omitted)).   This Circuit construes Rule 8(b) broadly in favor of joinder.   *United States v. Nicely*, 922 F.2d 850, 853 (D.C. Cir. 1991) ("[T]his circuit's law makes it difficult to prevail on a claim that there has been a misjoinder under Rule 8(b)").

  Rule 8(b) directs that "[t]wo or more defendants may be charged in the same indictment. . . if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed. R. Crim. P. 8(b). The District of Columbia Circuit has held that acts or transactions form a "series" within the meaning of Rule 8(b) if they "are connected together or constitut[e] part of a common scheme or plan." *Perry*, 731 F.2d at 990 (internal quotation marks and citations omitted). The touchstone for analysis under Rule 8(b) is whether there is "a logical relationship between the acts or transactions within the series."  *Nicely*, 922 F.2d at 853.   Rule 8(b) requires only that the government 'allege,' not prove, the facts necessary to sustain joinder."   *United States v. Halliman*, 923 F.2d 873, 883 (D.C. Cir.

---

[2]  Rule 8(a) has "no application" to the analysis of the issue of joinder of offenses in cases involving multiple defendants.   *United States v. Brown*, 16 F.3d 423, 427 (D.C. Cir. 1994).

1991) (citations omitted).³  In determining the propriety of joinder, "this circuit permits a trial court to consult the indictment as well as any other pretrial evidence offered by the Government." *United States v. Spriggs*, 102 F.3d 1245, 1255 (D.C. Cir. 1997) (quoting *United States v. Wilson*, 26 F.3d 142, 153 (D.C. Cir. 1994)).

Although there are limits to what can be charged in a single indictment, this Circuit has cautioned that it is "difficult to prevail on a claim that there has been misjoinder under Rule 8(b)" *Nicely*, 922 F.2d at 853.  Under Rule 8(b), "[t]here must be a logical relationship between the acts or transactions within the series."  *Id.* (citing *United States v. Perry*, 731 F.2d 985, 990 (D.C. Cir. 1984)).  Furthermore, joinder under Rule 8(b) will ordinarily be permitted where the government alleges a conspiracy in good faith.  *See United States v. Nerlinger*, 862 F.2d 967, 972 (2d Cir. 1988) (collecting cases and noting that "[t]he established rule is that a non-frivolous conspiracy charge is sufficient to support joinder under Fed. R. Crim. P. 8(b)."); *United States v. Hattaway*, 740 F.2d 1419, 1424 (7th Cir. 1984) (same); *United States v. Arruda*, 715 F.2d 671, 678 (1st Cir. 1983) (same).⁴

Even when joinder of defendants and offenses is proper under Rule 8(b), Federal Rule of Criminal Procedure 14(a) permits a court to sever defendants or counts, or "provide any other relief that justice requires," if the joinder "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a).  The decision to sever falls within the discretion of the trial court, and the balance

---

³ This low burden is consistent with the favor accorded the efficiency of joint trials and with the trial court's ability to grant severance at a later time if it becomes clear that the basis for joinder is missing and that the defendant would be prejudiced. *See United States v. Jackson*, 562 F.2d 789, 796-97 (D.C. Cir. 1977).

⁴ Although the defendants are not charged with a conspiracy in the indictment, the government's evidence will demonstrate through logical inference that both defendants conspired to violate 18 U.S.C. § 922(g)(1) when they engaged in the transaction for the seized firearm.

6

is to be "struck in favor of joint trials." *United States v. Bruner*, 657 F.2d 1278, 1298-90 (D.C. Cir. 1981) (quoting *United States v. Hines*, 455 F.2d 1317, 1334 (D.C. Cir. 1972)). Rule 14 even countenances some prejudice to a defendant from a joint trial, and severance is not required simply because a defendant might have a better chance of acquittal if tried separately. *Zafiro v. United States*, 506 U.S. 534, 540 (1993); *see also Halliman*, 923 F.2d at 884; *United States v. Wright*, 783 F.2d 1091, 1095 (D.C. Cir. 1986). Instead, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. As examples of serious risk, the Supreme Court cited circumstances where essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial, where many defendants with markedly different degrees of culpability are tried together in a complex case, and where highly prejudicial evidence that is probative of a defendant's guilt is only technically admissible against a codefendant. *Id*.

In the instant case, it is clear that based upon the evidence the government plans to present at trial, both defendants are charged from the same acts and transaction, to wit, the transfer of the backpack containing the firearm from Williams to Douglas. The witnesses and evidence establishing each defendants' participation in the offense will substantially overlap, and it would be a waste of time and resources to conduct two separate trials consisting of the same witnesses and evidence.

  B. <u>Defendant Williams Has Failed to Make a *Prima Facie* Case for Severance.</u>

It is well established that in order establish a *prima facie* case for severance on the ground of need for a co-defendant's testimony, "the movant must demonstrate: (1) a bona fide need for

the testimony; (2) the substance of the testimony; (3) the exculpatory nature and effect of the testimony; and (4) the likelihood that the co-defendant will testify if the cases are severed." *United States v. Ford,* 870 F.2d 729, 731 (D.C. Cir. 1989); *United State v. Ford,* 156 F. Supp. 3d 60, 66 (D.D.C. 2016). Further, "[o]nce the movant makes that threshold showing, the trial court must then: (1) examine the significance of the testimony in relation to the defendant's theory of the case; (2) assess the extent of prejudice caused by the absence of the testimony; (3) consider the effects on judicial administration and economy; and (4) give weight to the timeliness of the motion. *Ford,* 870 F.2d at 731.

It is also well established that a Defendant who fails to demonstrate "a reasonable probability" that the proffered exculpatory evidence from a co-defendant would be forth coming does not meet the threshold burden. *Id.* In *Ford*, the Court noted that "[a]lthough both Ford and Green (through counsel) asserted that the latter was willing to testify if the trials were severed, this offer was conditioned on Green's case being tried first." *Id.* The Court further noted that "[t]his tack has received judicial disapprobation elsewhere. Our sister circuits have concluded, rightly, we believe that 'Rule 14 [should not be read] as a mechanism for alleged co-conspirators to control the order in which they are tried.'" *Id.* [brackets in original] (quoting *United States v. Blanco,* 844 F.2d 344, 353 (6th Cir.), *cert. denied,* 486 U.S. 1046 (1988). The alleged exculpatory co-defendant testimony proffered by Defendant Williams is conditioned in the precise manner that was rejected in *Ford.* In his motion, Defendant Williams admits that "while Mr. Douglas will not testify at a joint trial **(or it seems any other trial prior to resolution of his case)**, Mr. Douglas has agreed to testify at a separate trial for Mr. Williams." (Emphasis added). ECF #29 at 4. Later in his motion, defense counsel again acknowledges the conditional nature of the proffered

8

testimony, stating, "[t]hrough counsel, Mr. Douglas has assured the undersigned that he will unequivocally testify if Mr. Williams is tried separately, **and after Mr. Douglas' case is completed**." (Emphasis added).  *Id.* at 8.  The conditional nature of the proffered co-defendant testimony demonstrates that the defendant has failed to establish a reasonable probability that his co-defendant will testify.  As Judge Royce L. Lamberth noted in *United States v. Edelin,* 118 F. Supp. 2d 36 (D.D.C. 2000):

> The Court cannot engage in flights of fancy where a defendant can force severance of his case by asserting that his co-defendant would testify on his behalf. The reality of the situation is very far from Earl Edelin's claims. In order for Tommy Edelin to testify at his father's trial, he would be subjecting himself to cross-examination. The likelihood that he would even consider doing so before his own case has come to a final judgment and all appeals have been exhausted is infinitesimally small. Even assuming that Tommy Edelin would testify, the Court rules that severance is not warranted when the proposed testimony of Tommy Edelin would be suspect, self-serving, and of potentially insignificant probative value.

*Id.* at 45.

The defendant has also failed to meet the burden of establishing with the requisite specificity the exculpatory nature and effect of Douglas' testimony.  *Ford,* 870 F.2d at 732. "This requirement demands more than conclusory statements by counsel; rather the showing must be sufficiently definite in nature to allow the court reasonably to conclude that the testimony would in fact be 'substantially exculpatory.'"  *Id.*  For example, Defendant Williams ignores the extent to which the proffered exculpatory testimony from Douglas could be impeached.  First, admission of Defendant Douglas's impeachable convictions under Fed. R. Evid. 609 will severely affect his credibility as a witness.  In addition, defense counsel's assertion that Douglas would testify that he had no plans to meet with Williams on the day of their arrest and had not talked or texted with

9

Mr. Williams (ECF #29 at 4) is directly contradicted by the call logs from Defendant Douglas's cellphone. These call logs reveal two FaceTime calls between Douglas and Williams on the day of their arrest, and only a short time before they were each arrested. Finally, the fact that at the time he was arrested Williams was in possession of his own cellphone significantly undermines the credibility of the claim that Williams was merely "borrowing" Douglas' phone.[5] ECF #29 at 7. The damaging impeachment Douglas would be exposed to is yet another factor that weighs against severance. *Ford,* 870 F.2d at 732-733; *Edelin,* 118 F. Supp. 2d at 45.

The instant case is similar in nature to the facts in *United States v. Ford,* 870 F.2d 729 (D.D.C. 1989), which involved the purchase of PCP by an undercover officer. There, Ford's co-defendant, Timothy Green, acted as a broker between the undercover officer and Ford, who supplied the PCP to Green, who then distributed it to the officer. *Id.* at 729-730. In rejecting Ford's assertion that since his co-defendant was the only witness capable of exculpating him and this was a straightforward case that would minimize the burdens on the court of trying two cases, the Court of Appeals held that:

> As to appellant's 'minimal burden' argument, to carve out a 'simple trial' exception to the principles that otherwise obtain in severance issues would have obvious and deleterious systemic effects. These effects properly to be taken into account by the courts even if, in this particular case, separate trials would have occasioned an insubstantial allocation of additional resources.

*Id.* at 733. In the instant case, it is likely that, in addition to the multiple fact witnesses, the government will need to call several experts, including a digital forensics expert to testify

---

[5] There are, of course, other more nefarious explanations as to why Douglas would be interested in disposing of his phone as he observed the police approach him. This is particularly so in light of the damaging evidence recovered from his phone and iCloud account that show his prior possession of firearms and his recent contacts with Williams on the day of the transaction.

regarding the cellphone and iCloud extractions, a DNA expert, and a firearms expert to testify regarding the movement of the firearm in interstate commerce. Accordingly, it is possible that the trial could last up to three days, excluding jury selection. As mentioned *supra,* virtually all of the evidence presented will be admissible against both defendants and would still need to be presented at both trials if severance was granted.

C. <u>Alleged Disparity in Evidence Does Not Require Severance.</u>

This Circuit has continually held that a joint trial is inappropriate only when the party moving for severance shows that the evidence against one defendant is "<u>far more damaging</u> than the evidence against the other defendant." *United States v. Tarantino*, 846 F.2d 1384, 1398 (D.C. Cir. 1980) (emphasis added); *accord Halliman*, 923 F.2d at 884; *United States v. Butler*, 822 F.2d 1191, 1194 (D.C. Cir. 1987). Notably, both defendants here are charged with the same offense—felon in possession of a firearm. *Compare United States v. Sampol*, 636 F.2d 621 (D.C. Cir. 1980) (severance granted where one defendant charged with two murders and co-defendant charged with false declarations and misprision of felony). Furthermore, this circuit has stated that, as a general rule, "[a]bsent a dramatic disparity of evidence, any prejudice caused by joinder is best dealt with by instructions to the jury to be given individual consideration to the defendant." *Bruner*, 657 F.2d at 1290; *United States v. Long*, 905 F.2d 1572, 1581 (D.C. Cir. 1990); *Tarantino*, 846 F.2d at 1398; *United States v. Butler*, 822 F.2d at 1194. "The few cases in which [the D.C. Circuit has] overturned a trial court's denial of a motion to sever have involved ***clear disparities*** between the weight, quantity, or type of the evidence against the movant and against the other defendants." *Halliman*, 923 F.2d at 884 (emphasis added). The critical question is "whether a jury could reasonably compartmentalize the evidence introduced against each individual defendant." *Id.*; *see*

11

*also United States v. Franklin*, No. 04-cr-128 (RMC), 2005 WL 8157514, at *13 (D.D.C. Dec. 16, 2005) (noting "critical question" turns on jury's ability to compartmentalize the evidence).

Here, the evidence of the transaction between Williams and Douglas is admissible against both, to wit, the undercover officer's observation of Williams' transfer of the backpack to Douglas for money, including the observations of the nervous behavior by Douglas. Furthermore, the evidence of the cellphone activity between both defendants in the days leading up to the transaction, including on the day the transaction occurred, is also admissible against both defendants and tends to establish their intent to meet that day. The government also anticipates that there will be testimony and other evidence concerning the weight of the gun inside the bag, such that it would be unlikely that someone handling the bag would be unaware of the presence of the firearm inside. Finally, should the Court admit the screen shot of Defendant Williams speaking to the masked individual depicted holding a firearm that he texted to Douglas at Douglas's request; this would be another brick in the wall establishing both defendants' knowledge and intent regarding the firearm.

Assuming this Court grants the government's 404(b) motion to admit some or all of the proffered evidence of Douglas' prior possession of firearms (which would not be admitted against Williams); the jury with a limiting instruction could easily compartmentalize this evidence. *Zafiro*, 506 U.S. at 539. In the instant matter, the risk of jury confusion is minimal, and any claim that the jury would be unable to follow the Court's instructions to compartmentalize the evidence against each defendant is untenable. At trial, the defendants will be able to clearly delineate the evidence that exists or does not exist as to each defendant and a jury instruction can be provided by the Court to ensure that the jury will make individual determinations of the defendants' guilt.

12

"[I]t is not enough merely to show that separate trials might have provided the defendant a better shot at acquittal." *United States v. Berg*, 714 F.3d 490, 496 (7th Cir. 2013). The defendant bears the "heavy burden" of establishing that the joint trial "prevent[ed] the jury from arriving at a reliable judgment as to guilt or innocence." *Id.*; *see also Zafiro v. United States*, 506 U.S. 534, 539 (1993) ("a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence"); *United States v. Benedict*, 855 F.3d 880, 885 (8th Cir. 2017) ("This trial was not the 'unusual case' in which the efficiency of joinder would have been outweighed by difficulty for the jury to analyze separately the evidence against each individual defendant.").

The requisite "heavy burden" of showing prejudice is not satisfied by showing that one defendant is less culpable than another, or that the defendant would have a better chance of acquittal in a separate trial, or by complaints of "spill-over" of damaging evidence presented against a codefendant. *United States v. Morgan*, 748 F.3d 1024 (10th Cir. 2014); *see also United States v. White*, 737 F.3d 1121 (7th Cir. 2013). There is substantial evidence of each defendants' involvement in the charged offense: "the disparity of evidence [does] not rise to a level necessary to mandate severance." *See United States v. Moore*, 651 F.3d at 96; *see also Ford*, 155 F. Supp. 3d at 69-70 ("Although some defendants [were] alleged to have committed fewer crimes (no gun or PWID charges, for example) or participated less extensively or played different roles," severance was not justified).

As discussed *supra,* even at a separate trial, much of the evidence against each of the defendants would be independently admissible as to each defendant, even if the trials were to be severed. There would be no benefit received to the Court in severing the defendants: there would

13

be two trials, costs would be incurred twice, witnesses would be inconvenienced, and additional delays would be imposed in bringing each defendant to trial separately. *See United States v. Celis*, 608 F.3d 818, 844 (D.C. Cir. 2010) (quoting *United States v. Mardian*, 546 F.2d 973, 979 (D.C. Cir. 1976) (*en banc*) ("[d]istrict courts should grant severance" under Rule 14 "sparingly because of the 'strong interests favoring joint trials, particularly the desire to conserve the time of courts, prosecutors, witnesses, and jurors.'").

As noted above, jury instructions can serve to mitigate any concerns by the defendant that jurors may inappropriately consider evidence against him. Courts in this jurisdiction have regularly pointed to the ability of courts to employ instructions to the jury as a way to mitigate concerns of spillover prejudice. *See, e.g.*, *Franklin*, 2005 WL 8157514, at *13 ("the Court also concludes that a jury could well be instructed — before and during trial, and before deliberations begin — on the separate nature of the charges of violence against Messrs. Franklin and Simmons, and the verdict form can further emphasize these distinctions. *See Zafiro*, 506 U.S. at 541; *Spriggs*, 102 F.3d at 1257 (discussing effectiveness of curative instructions).

In *United States v. Gray*, Judge Lamberth explained that:

> Courts have the discretion to grant less extreme alternatives that may alleviate prejudice but not create an increased burden on the judicial system, such as additional jury instructions or separate juries. "When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but ... less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), cited in *Edelin*, 118 F. Supp. 2d at 42. Curative instructions are the preferred method of preventing prejudice to defendants; to assert severance over curative jury instructions, the defendant must show that jury instructions would be inadequate to cure any potential prejudice. *Edelin*, 118 F. Supp. 2d at 42.

*Id*. at 7 (D.D.C. 2001).

14

Because there are numerous ways that the Court can alleviate the defendant's concerns about potential prejudice that would not result in separate trials for each defendant, including limiting instructions, severance is not justified. The judicial economies of trying this case as a single trial – where much of the evidence would otherwise be admissible in separate trials – strongly weigh in favor of denying the defendant's motions to sever.

Wherefore, the government respectfully requests that this Court deny Defendant's Williams' motion for severance.

Respectfully submitted,

MICHAEL R. SHERWIN
United States Attorney
N.Y.S. Bar No. 4444188

By:     /s/
STEVEN B. WASSERMAN
DC Bar No. 453251
Assistant United States Attorney
555 4th Street, N.W. 4th Floor
Washington, D.C. 20001
(202) 252-7719 (Wasserman)
Steve.wasserman@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this motion has been served via ECF to counsel for the defendants, this 4th day of September 2020.

/s/
STEVEN B. WASSERMAN
Assistant United States Attorney