

U.S. Department of Justice

Michael R. Sherwin
Acting United States Attorney

*District of Columbia*

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C.  20530*

September 4, 2020

**Sent Via *USAfx***

John Peter Marston
Foley Hoag, LLP
1717 K Street, NW
Washington, DC 20006
jmarston@foleyhoag.com
*Attorney for Tavonte Williams*

Eugene Ohm
Federal Public Defender
625 Indiana Avenue, NW Suite 550
Washington, DC 20004
eugene_ohm@fd.org
*Attorney for Theodore Douglas*

          Re:    United States v. Tavonte Williams, et al.
                  Case No. 20-121 (CJN)

Dear Counsel:

      This letter is to provide you with notice of the experts the government intends to use at trial in this matter.  Accompanying this letter are the files containing the curricula vitae for our experts.

      a.    DNA

      The government intends to sponsor FBI Forensic Scientist Tiffany Smith to testify. If called by the government, expert witness Tiffany Smith will testify regarding the conclusions contained in the report (produced on August 11, 2020).  She will testify factually about the quality assurance measures taken to ensure the integrity of the testing results, about serology generally, and the tests for the presence of DNA specifically, including how they are performed and interpreted. In addition, she will testify factually about DNA in general (i.e., what it is, where it can be found, its uniqueness, its durability, and its use in forensics) and the testing process used during the testing in this case.  This testimony will include how an individual may transfer his or her DNA to another person or object from physical contact.  DNA may also left behind in bodily fluids, such as blood, semen, or saliva.  She will testify that skin cells also contain DNA and that a person may or may not leave behind skin cells after making physical contact with their skin and an object.  Even if

skin cells or bodily fluids are left behind on such objects, in some cases, the amount of cells or DNA left behind on a surface may not be sufficient to analyze.

Ms. Smith will generally testify about the factors that could affect the ability to recover DNA on an item, to include:

- The person may not have been in contact with the item.

- The length of contact the person's skin has with the surface at issue. A person who has only momentary contact between their skin and a surface will be less likely to leave skin cells on the surface. A person who has longer contact between the skin and the surface will make it more likely, but not certain, that skin cells will be deposited on the surface.

- The person may have worn gloves preventing transfer of DNA to the item.

- The quantity or amount of DNA left. A minimum amount of DNA is needed in order to detect with current methodologies. Due to advances in science, we can now detect DNA where 10-20 years ago it was not detectable. However, there are still limits to our ability to obtain DNA.

- The type of biological cell that is being tested. Skin cells tend to leave less quantity of DNA, per square inch tested, than do biological fluids like blood, semen, and saliva.

- Variations between individuals. Some people leave more DNA behind than others due to physiological (rate of skin shedding, vasectomy, diseases that can affect white blood cell count) and habitual factors (hand sneezer, hand washer, etc.) An additional physiological factor that affects the ability to recover DNA is that some persons have more natural oils in their skin, or sweat more profusely, than others. When persons with oils or liquids on their skin touch surfaces, it is more likely that the surface that is contacted by the skin will retain the oils and liquids from the skin. Persons who have more oils or liquid on their skin are more likely to leave behind skin cells, which are retained in these oils or liquids. In contrast, persons who produce less oils or liquids on their skin are less likely to leave behind skin cells when they contact surfaces.

- If the item was wiped, washed, or cleaned prior to collection. This will remove DNA from the item leaving less DNA to detect.

- The surface at issue and the nature of the contact. A person having contact with a rough and indented surface, such as sandpaper, is more likely to leave behind skin cells than a person having contact with a smooth surface, such as metal or glass. This is because the skin cells are more easily removed from the skin by abrasive contact with a surface. If a person briefly touches a rough and indented surface, such as sandpaper, that person will generally leave fewer skin cells behind on the surface (if at all) than if the person had rubbed their skin against the surface for some period of time.

- Sunlight, heat, humidity, and other meteorological conditions are all factors that can affect DNA quality. If the quality of DNA is impaired, it affects the ability to detect it. It is important to note that this does not change the results of the DNA if it is detected; rather, it simply prevents results from being obtained.

- If the sample was stored improperly.

- Chemical interference – both intentional and unintentional. Chemicals may be applied to the DNA to purposely break it down. Also, some chemicals are in the crime scene itself and may prevent DNA from being detected.

The expert witness's expected testimony is based upon her years of experience working as a Forensic Scientist for FBI. The qualifications of Ms. Smith are contained on her Curriculum Vitae, which is provided with this letter.

    b.    <u>Digital Forensics Experts</u>

The government intends to call DFS Digital Forensic Scientist Kristen Fudge and Nick Boffi, Digital Forensic Examiner, United States Attorney's Office for the District of Columbia as experts in forensic computer analysis. Ms. Fudge will testify concerning forensic extractions of the electronic devices seized in this case, specifically two Apple iPhones (items 003 and 004). Mr. Boffi will testify concerning the forensic extractions from the iCloud accounts in the names of tavonteqwilliams@gmail.com and montanamercy101@gmail.com. Reports of these extractions have been provided in discovery and may be supplemented in advance of trial. It is anticipated that these experts will testify regarding the steps that were taken in performing the forensic extractions, the extraction tools and reports that were used, the documents that were recovered, and the programs that appear on the devices. More specifically, these witnesses will explain the parsing tools used to create the reports, and how individual categories of results relate to their locations on the devices. They may testify regarding specific files (including metadata for those files), file categories, and programs that were identified and recovered from the devices, including, but not limited to: web browsing and search history; cookies; cached files; stored login information; email (local and webmail-based), chats, social-networking, and other electronic messages; cloud storage and cloud-stored files; peer-to-peer (P2P) transfer systems and files; torrent files; image and video files; and files found in unallocated space.

The CVs for Ms. Fudge and Mr. Boffi are included with this letter.

    c.    <u>Firearms and Toolmark Examiner</u>

The government may also call a firearms expert to testify regarding the fact that the firearm and ammunition recovered in this case were not manufactured in the District of Columbia, and that this item was shipped or transported interstate or foreign commerce from another state into the District of Columbia. Further details specifying the identity of the expert, the expert's qualifications, and the substance and basis of the expert testimony will be provided under separate cover.

    d.    <u>Request for Notice of Defendants' Expert Testimony</u>

The government hereby requests, pursuant to Fed. Crim. R. (16)(b)(1)(C), disclosure of a written summary of expert testimony the defendants intend to use as evidence at trial or at any motions hearing. This summary must describe the opinions of the witness, the bases and reasons therefore, and the witnesses' qualifications.

Please contact me if you have any questions or concerns.

    Sincerely,

    _____/S/_____
    STEVEN B. WASSERMAN
    Assistant United States Attorney