**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CR. NO. 20-121-1 (CJN)** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **TAVONTE WILLIAMS,** | : | |
| | : | |
| **Defendant.** | : | |

**OPPOSITION TO GOVERNMENT'S MOTION TO ADMIT**
**OTHER CRIMES EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)**

Defendant Tavonte Williams hereby submits this Opposition to the Government's motion to admit evidence against him under Federal Rule of Evidence (FRE) 404(b).[1] The lone piece of 404(b) evidence the government seeks to offer against Mr. Williams does not show Mr. Williams engaging in any illegal conduct or other "bad acts" himself, but rather is a screen shot of someone else dressed like a ninja holding what appears to be a firearm while video chatting with Mr. Williams, whose face appears in a tiny picture in the upper left corner. The government apparently seeks to show that because the ninja figure was holding a gun, Mr. Williams somehow had intent to possess or knowledge of the gun Mr. Douglas was carrying in a backpack two months later. The government has not shown and cannot show Mr. Williams had anything to do with the gun Mr. Douglas was carrying, and this ninja photo of yet another gun Mr.

---

[1]  While this Opposition relates only to the single item of 404(b) evidence the government proposes to use against Mr. Williams, the government's motion set forth several additional items of 404(b) evidence against Mr. Douglas. Undersigned counsel understands that Mr. Douglas' counsel plans to oppose the admission of those items of evidence, and Mr. Williams joins in that opposition to the extent any such evidence may be offered in any trial involving Mr. Williams.

Williams did not possess adds nothing but inflammatory theater to the government's case. The "other conduct" offered by the government, which was a video chat at an unknown but obviously considerable distance with someone who chose to put on a ninja costume and pose with a gun, is not at all similar to the alleged conduct underlying the charge in this case. For these reasons, and as further discussed below, the government's motion to admit the gun-ninja photo should be denied.

### Background

The government's evidence against Mr. Williams in this case is minimal and inaccurate, and he maintains that he is innocent of the charge against him. The case involves an alleged exchange between Mr. Williams and Mr. Douglas where, according to the government's sole witness, Mr. Williams handed a backpack to Mr. Douglas, who then "hurriedly" concealed the backpack under his outer coat and handed cash to Mr. Williams with a handshake. The lone government witness to these events is an undercover officer ("UC") whose precise location (and thus distance and quality of vantage) and duration of viewing during the critical moments of the alleged interaction between the defendants have not been disclosed. Within moments after seeing this alleged exchange, the UC radioed other officers who arrived almost immediately on the scene. The officers stopped Mr. Douglas, cuffed him, and one officer squeezed the back of Mr. Douglas' outer coat in an attempt to feel what was underneath. The officer asked Mr. Douglas if he had any knives or weapons on him. Mr. Douglas stated that he had a glasses case. The squeezing officer asked if he could check the bag, and when Mr. Douglas again stated it was a glasses case, the squeezing officer stated, "I don't know if that's glasses, man." Later, the officer would claim that he felt a gun through the coat, sweatshirt, and backpack separating his hand from the objects inside. The police conducted a search of the backpack. In that search the

officers found a gun and, according to the squeezing officer's testimony at Mr. Douglas'
preliminary hearing, they also found a glasses case.

After they stopped Mr. Douglas, officers stopped and eventually searched Mr. Williams,
whom the UC identified as the person who handed Mr. Douglas the backpack.  Despite the
alleged "transaction" having just occurred, the police found no cash on Mr. Williams.  They did
find, however, that Mr. Williams was in possession of Mr. Douglas' phone.

Mr. Williams maintains that he did interact with Mr. Douglas that day, but the evidence
will show that it was not some kind of pre-planned exchange or sale, that the interaction in fact
involved borrowing Mr. Douglas' phone which, unlike the non-existent cash in this case, Mr.
Williams did have on him when searched, and that Mr. Williams had nothing to do with the
backpack Mr. Douglas was found wearing.  The government has no evidence tying Mr. Williams
to the backpack or the gun other than the UC's testimony, which, not only is inaccurate, it does
nothing to establish Mr. Williams knew what was in the backpack.[2]  Further, Mr. Douglas'
statement about his glasses case, which the government will undoubtedly offer against Mr.
Douglas to show his knowledge of the backpack's contents, belies the government's theory that
Mr. Williams, let alone anyone else other than Mr. Douglas, had any knowledge of the contents
of the backpack.

It was clear from the preliminary hearings that the government recognizes its need to
cover the holes in its case in any way it can.  Surprisingly, one way it has done this is to claim

---

[2]      The government has tested the gun and the magazine in this case for Mr. Williams' DNA,
and while DNA was recovered from the gun and magazine, Mr. Williams was excluded as a
contributor.  The government also examined the gun for fingerprints, and found none of value.
In addition, numerous cameras are located in the direct vicinity of the alleged "exchange" in this
case, yet the government has produced no footage showing the events.

that the all-seeing UC took his eyes off the defendants just when the all-knowing Mr. Williams must have slipped the cash to someone else.

In a further attempt to fill the gaps, the government now seeks to tidy its case by offering a raft of 404(b) evidence, almost all of which relates solely to Mr. Douglas. This evidence includes multiple photos of Mr. Douglas holding guns, shooting guns, and also messages Mr. Douglas wrote to others about purchasing guns.

Just one piece of 404(b) evidence relates to Mr. Williams – a cell phone screen shot of a video call (such as on FaceTime) sent from Williams' phone to Douglas' phone after Douglas said to Williams by text, "Send me that screen shot." The screen shot shows a person dressed in all black, with a black mask/head-covering with only a horizontal slit for the person's eyes, similar to popularized views of ninja attire. The ninja person is standing indoors at an unknown location in front of an accordion-style folding door, and is holding what appears to be a semi-automatic handgun with several menacing accessories added to it. The second person involved in this video chat is Mr. Williams, who appears in a tiny picture in the upper left corner, wearing a parka, apparently somewhere outside. Mr. Williams is not at the same location as the gun-ninja (indeed, the government has not offered any indication of the location of either person in the screen shot), is not doing anything wrong or illegal, and sending this picture to Douglas upon his request, with no further discussion, <u>tells us nothing about Mr. Williams being personally involved with firearms</u>.

### Law

The government has set out some of the general law under FRE 404(b), which will not be repeated here. But a primary requirement when seeking to establish knowledge or intent with prior illegal conduct or "bad acts," which the government did not address with regard to the

4

404(b) evidence offered against Mr. Williams, is that evidence must meet a threshold level of similarity in order to be admissible.  *See United States v. Long*, 328 F.3d 655, 661 (D.C. Cir. 2003); *see also Gastineau v. Fleet Mortgage Corp.,* 137 F.3d 490, 494 (7th Cir. 1998)  ("[t]he other act must be similar enough and close enough in time to be relevant to the matter at issue").  "Otherwise, the evidence would lack probative value of intent, and instead would be more in the nature of propensity evidence."  *Mazloum v. D.C. Metro. Police Dep't*, 517 F. Supp. 2d 74, 81 (D.D.C. 2007).  *See also Long*, 328 F.3d at 661 (recognizing that similarity is necessary to be "probative of intent rather than mere propensity").  To prove knowledge or intent, evidence of similar conduct at a similar time and similar location has been found admissible, while evidence involving different conduct and different people is not admissible. *See, e.g.*, *Mazloum*, 517 F. Supp. 2d at 81 (holding that the defendant's violent verbal threats against his wife two days prior to the alleged assault and battery on another person were not admissible because they were offered as propensity evidence, and verbal threats are "fundamentally different" than actual physical force).  With regard to this standard of similarity, if the other crimes or bad acts evidence is not "closely related" to the offense, it must be ruled inadmissible.  *Id.*

## Argument

The government's only rationale for offering the gun-ninja screen shot is that Mr. Williams is charged with constructive possession, and thus "the issue of knowledge and intent to possess the firearm will be a dispute issue of fact."  Government's Motion at pages 1 and 5. Notably, the government offers no theory of similarity between this photo and the alleged conduct in this case, and no viable such theory exists.

The ninja screen shot is entirely dissimilar from the alleged conduct at issue, and does not even show Mr. Williams doing anything wrong or possessing anything, much less a firearm. The only possible purpose the government might have in mind for this photo is to show that Mr. Williams associates with people who sometimes possess guns, but that has no probative value in the government's attempt to show that on the day in question, Mr. Williams knowingly possessed a gun. The highly inflammatory nature of the photo, depicting a menacing firearm in the hands of a person clad entirely in black clothing except for a thin eye-slit, coupled with the complete lack of probative value given that it does not in any way indicate Mr. Williams has ever, or would ever himself possess a firearm, shows that the government's motion with regard to this item of evidence must be denied.

The government also argues that this photo should be admitted because Douglas asked Mr. Williams to send it to him, and Mr. Williams complied by sending it via text message. But the only legitimate purpose for admitting the entire message, photo and all, would be to show an association between Mr. Williams and Mr. Douglas. That association will be apparent in numerous other ways, and the defense will concede such association. As such, the screen shot text message is not probative of any issue in dispute in this case, and should be excluded from evidence.

## **Conclusion**

For the reasons discussed above, the FRE 404(b) evidence the government seeks to admit against Mr. Williams has virtually no probative value, is purely and unfairly prejudicial, and the government's motion to admit this piece of evidence should be denied.


Dated: September 4, 2020                    Respectfully Submitted,

/s/ John Marston
John P. Marston, DC Bar No. 493012
Foley Hoag, LLP, 1717 K Street, NW
Washington, DC 20006
Telephone: 202-261-7321
Cell: 202-253-1104
Fax: 202-785-6687
jmarston@foleyhoag.com