# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CR. NO. 20-121-1 (CJN)** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **TAVONTE WILLIAMS,** | : | |
| | : | |
| **Defendant.** | : | |

## SUPPLEMENTAL BRIEF REGARDING DEFENDANT WILLIAMS' MOTION TO SUPPRESS IDENTIFICATION

### Background

On August 21, 2020, Tavonte Williams filed a Motion to Suppress his identification by undercover Officer Isaac Jackson because the identification procedure violated his due process rights under the Fifth Amendment,[1] and the identification was also the fruit of an illegal stop in violation of the Fourth Amendment.  On August 31, 2020, Defendant Douglas also filed a motion to suppress his identification by Officer Jackson pursuant to the Fourth and Fifth Amendments.  On September 4, 2020, the government filed an Omnibus Opposition to both motions to suppress identification.  On October 20, 2020, the Court held an evidentiary hearing on this motion (and Douglas' separate motion to suppress tangible evidence and statements).  At the conclusion of testimony, the Court ordered the parties to file supplemental briefs with references to those portions of the transcript that the parties view as critical to the issues

---

[1]    In the Motion to Suppress, counsel inadvertently referred to the Due Process Clause of the Fourteenth Amendment, which of course extends all of the criminal procedural guarantees of the Fourth, Fifth, and Sixth Amendments to state-level prosecutions.

1

presented.  Pursuant to the Court's order, Mr. Williams hereby submits this supplemental brief,

setting forth the portions of Officer Jackson's testimony that Mr. Williams believes support his

motion.

**<u>Argument</u>**

## I.    The Identification Procedure Involving Officer Jackson Was Suggestive and Unreliable.

Officer Jackson's identification of Mr. Williams was a self-guided show-up

identification procedure.  *See* Tr. pages 52-53, 73-78.  Like all show-up identifications, the

procedure was highly suggestive, and in this case, it was unnecessarily so.  As clearly shown on

the police body worn camera footage in this case, and as Officer Jackson himself testified, he

made the identification of Mr. Williams when Mr. Williams was surrounded by police and being

held in the immediate vicinity of Mr. Douglas.  *See id.*; Def. Williams' Ex. 2; Gov. Ex. 4.

Officer Jackson repeatedly emphasized that, in observing what he thought was a hand-to-hand

exchange, his focus was on Mr. Douglas, who, unlike the other individuals observed on camera

footage, was wearing a distinctly bright blue jacket.  *See* Tr. pages 44, 64-65, 80; Gov. Ex. 4.

Officer Jackson gave incredibly generic descriptions of the "giver" of the bag until sometime

after the giver and Mr. Douglas walked out of Officer Jackson's sight for a time, and then

walked back into view.  These facts, and others, call into question whether Officer Jackson's

ultimate identification of Mr. Williams as the giver would have been at all possible if Mr.

Williams had not been detained, surrounded by police, and standing just feet away from Mr.

Douglas.   It is Mr. Williams' position, therefore, that Officer Jackson's self-guided show-up

identification procedure was unnecessarily suggestive.

2

Officer Jackson's testimony in the hearing also showed that his identification of Mr. Williams was utterly unreliable. It is, frankly, hard to conceive of an officer's observations (or lack thereof) having greater indicia of unreliability than Officer Jackson's in this case.

Opportunity to view at the time of the crime: Officer Jackson claimed that he had a clear line of sight to view the alleged exchange of a backpack (Tr. page 37), but he was viewing the alleged exchange from a distance he stated was 15 yards, from across the street, seated in a car, looking past an SUV and a tree. *See* Tr. page 94; Gov. Ex. 2. Further, after the exchange, within perhaps as few as 20 seconds, the giver of the bag and Douglas walked away out of Officer Jackson's view. *See* Tr. at pages 39, 114. In addition, as highlighted further below, Officer Jackson's admitted lack of focus on the giver of the bag, his patently minimal and generic description of the giver, and the number of things he missed or did not see, show that his opportunity to view the giver of the bag was obviously poor and fleeting, and subject to his deeply divided attention.

Degree of attention: Officer Jackson repeatedly emphasized that his focus was on Mr. Douglas, not the giver of the bag (*see, e.g.*, Tr. at pages 64-65), which explains his total lack of certainty or knowledge concerning numerous aspects of the giver and the surrounding events of this alleged exchange. Officer Jackson had no idea how the giver of the bag was holding the bag when he walked up, if he was even holding it all – Officer Jackson only noticed the bag when it was already extended out by the giver to hand it to Mr. Douglas. *See* Tr. at pages 60-61. Even though Officer Jackson proclaimed that his focus was on Douglas, he had no idea what Douglas did with his jacket while he hurriedly put it on over the backpack, nor did he recall any details regarding the shirt Douglas was wearing. *See* Tr. at page 31, 66. Officer Jackson admitted, for the first time anywhere, that he did not actually see whether Douglas handed cash to the giver of

3

the bag.  *See* Tr. at pages 30, 39, 67-70.  In fact, when Mr. Douglas' counsel stated, "It sounds

like you are saying you really don't know what it was," Officer Jackson agreed, stating, "That's

correct.  I just can't say."  Tr. at page 91.  He also could not say where Douglas pulled this

"object" from, what the giver of the bag did with it upon receipt, and Officer Jackson admitted

that he was simply "too far" away to see what it was.  *See* Tr. at pages 67-70.  Further, Officer

Jackson claimed that the giver of the bag was on the opposite side of a fence from Douglas, and

that moments later when Douglas and the giver walked away, the giver was on the same side of

the fence, yet Officer Jackson has no idea how or in what manner the giver got over the fence.

*See* Tr. at page 62.  Indeed, Officer Jackson admitted that this detail involving the giver (as is

apparently true of a great many details) "wasn't important" to him.  Tr. page 64.  Finally, while

Officer Jackson acknowledged other black males were near the giver and Douglas around the

time of the alleged exchange, Officer Jackson had no idea what they looked like, whether tall or

short, heavy or skinny.  Tr. page 119.  The only thing Officer Jackson could testify to with any

certainty at all was that a person in a blue coat had a backpack concealed under the jacket.  As it

relates to the giver of the bag, or any other detail, Officer Jackson's degree of attention was, to

put it mildly, minimal and poor.

     Accuracy of prior description:  Officer Jackson's descriptions of the giver of the bag are

still further indications of the unreliability of his identification of Mr. Williams as the person

who handed Douglas the bag.  His initial description was as generic and unhelpful as imaginable.

He simply described the giver as a black male with a gray coat.  Tr. page 80; Gov. Ex. 3.  This

was all Officer Jackson could muster in that critical moment just after he observed something

being done with the backpack, and while he was looking at the individuals involved.  Tr. page

40.  Officer Jackson broadcast a second description of the giver – a black male with a gray coat

4

with puffy hair, real messy hair – after the exchange was over and the two individuals had

walked away.  Tr. at page 42; Gov. Ex. 3  Then, it seems, after Douglas walked back into view

along with another individual, Officer Jackson added the first distinctive detail as it related to the

giver, saying that it was a black male with a grayish coat with "orange hood."  Tr. p. 81; Gov.

Ex. 3.[2]  Officer Jackson's descriptions were vague when they most needed to be clear.  Officer

Jackson described multiple individuals walking back and forth before and after the exchange,

including Douglas and others.  *See* Tr. at pages 38, 43.  Given Officer Jackson failed to specify

any distinct details regarding the giver when he was looking right at him and watching this

alleged exchange, it seems clear it could have been anyone who walked back into view with

Douglas, and Officer Jackson could easily have fingered the wrong person as the giver.  As

Officer Jackson stated, he was in a "hurry" as he was broadcasting and watching, and he "was

more focused on the individual wearing the blue coat."  Tr. page 43.  Further, he only added a

detail after the giver and Douglas had walked out of sight, and then Douglas returned with

someone now in an "orange hood."  *See* Tr. pages 43-44.  This unhelpful, unclear, and ever-

changing series of descriptions shows Officer Jackson's identification of Mr. Williams as the

person who handed Douglas a bag is entirely unreliable.

Vantage during show-up:  Finally, Officer Jackson was even further away from Douglas

and Williams when he conducted his self-guided show-up than he was when he was watching the

alleged exchange.  As he showed us on an overhead map (Def. Williams Exhibit 2), he was at the

---

[2]     It appears Officer Jackson stated both that he could, and could not, see the giver involved
in the exchange when he gave this third description.  Tr. at pages 43-44, 82.  In the Motion to
Suppress, counsel stated that the detail of the "orange hood" may have been suggested to Officer
Jackson by officers who stopped Mr. Williams in the street.  Counsel now agrees that Officer
Jackson was the first one to add this detail to his description, and it was not suggested by another
officer.

mouth of the parking lot behind the apartments, looking through and/or around several police cars and other individuals from as many as 20 yards away, when he positively identified Mr. Williams as the giver of the bag.  *See* Tr. pages 53, 73-78.  Officer Jackson's identification of Mr. Williams as the giver was unreliable.[3]

## II.      Mr. Williams' Identification Followed an Illegal Stop and Should be Suppressed.

As noted above, Officer Jackson did not actually see anything that amounts to reasonable articulable suspicion or probable cause, which would justify stopping or arresting Mr. Williams. The alleged exchange lacked indicia of a suspect transaction:  Officer Jackson did not see Douglas hand money to the giver, and he did not hear the parties say anything to each other.  *See* Tr. at pages 91, 105.  Further, Douglas did not depart separately and away from the giver after the alleged exchange, and Douglas did not open or inspect the bag.  *See* Tr. at pages 105-106. Officer Jackson did not observe facts supporting a belief that a sale had occurred; it is entirely permissible for one person to hand a bag to another person, or for one person to hold a bag for second person while that second person retrieves something.  Because there was no reasonable articulable suspicion, nor probable cause, Officer Jackson's identification of Mr. Williams while Mr. Williams was detained illegally must be suppressed.

## Conclusion

For the reasons stated above, Mr. Williams asks that the Court suppress the show-up identification of Mr. Williams by Officer Jackson on the scene, and further preclude Officer Jackson from making any in-court identification of Mr. Williams.

---

[3]      We note that two other often-cited factors, level of certainty and passage of time, do not indicate Officer Jackson's identification was unreliable.

Dated: November 3, 2020                    Respectfully Submitted,

                                           /s/ John Marston
                                           John P. Marston, DC Bar No. 493012
                                           Foley Hoag, LLP, 1717 K Street, NW
                                           Washington, DC 20006
                                           Telephone: 202-261-7321
                                           Cell: 202-253-1104
                                           Fax: 202-785-6687
                                           jmarston@foleyhoag.com