```
 1                IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF COLUMBIA

 3
    UNITED STATES OF AMERICA,
 4                                              CR Action
              Plaintiff,                        No. 1:20-121
 5
         vs.                                    Washington, DC
 6                                              March 1, 2021
    TAVONTE WILLIAMS AND
 7  THEODORE B. DOUGLAS                         10:30 a.m.
              Defendants.
 8  _____/

 9
              TRANSCRIPT OF TELEPHONE STATUS CONFERENCE
10              BEFORE THE HONORABLE CARL J. NICHOLS
                  UNITED STATES DISTRICT JUDGE
11

12  APPEARANCES:

13  For the Plaintiff:      STEVEN B. WASSERMAN
                              U.S. ATTORNEY'S OFFICE FOR D.C.
14                            555 Fourth Street, NW
                              Washington, DC 20530
15                            (202) 252-7719

16  For T. Williams:       JOHN PETER MARSTON
                              FOLEY HOAG, LLP
17                            1717 K Street, NW
                              Washington, DC 20006
18                            (202) 261-7321

19
    For T. Douglas:        EUGENE OHM
20                            FEDERAL PUBLIC DEFENDER FOR D.C.
                              625 Indiana Avenue, NW, Suite 550
21                            Washington, DC 20004
                              (202) 208-7500
22

23  Reported By:     LORRAINE T. HERMAN, RPR, CRC
                     Official Court Reporter
24                   U.S. District & Bankruptcy Courts
                     333 Constitution Avenue, NW
25                   Room 6720
                     Washington, DC 20001
```

**P R O C E E D I N G S**

COURTROOM DEPUTY: Good morning, this is criminal case year 2020-121 United States of America versus Tavonte Williams, Defendant number 1 and Theodore B. Douglas Defendant number 2, both who are present on the phone.

Counsel, please introduce yourselves for the record, beginning with the Government.

MR. WASSERMAN: Good morning, Your Honor. Steven Wasserman on behalf of the United States.

THE COURT: Good morning, Mr. Wasserman.

MR. MARSTON: Good morning, John Marston for Tavonte Williams.

THE COURT: Good morning, Mr. Marston.

MR. OHM: Eugene Ohm on behalf of Theodore B. Douglas.

THE COURT: Good morning, Mr. Ohm.

Here is why I scheduled this status conference, under the current COVID-related standing order issued by Chief Judge Howell, all trials in our court are suspended through March 15th. And as you can imagine there has been a lot of discussion about whether and how we could resume trials after that date.

I think it's likely -- this has not been finalized, but I do think it is likely that trials will, in fact, resume after March 15th, but they are going to be

1    resumed in a highly-coordinatated manner that will involve,

2    among other things -- and this is all still to be finalized,

3    but I think it is relevant for this case, and I want to make

4    sure that people understand the context -- that first of --

5    will likely be held exclusively or at least almost

6    exclusively in the ceremonial courtroom and other areas of

7    the sixth floor, which obviously ends up affecting how many

8    juries can be selected at the same time; that's the first

9    thing.

10             The second thing is multi-Defendant cases like

11   this one will very likely be conducted, the trial itself

12   will be conducted in the ceremonial courtroom, which is

13   obviously where we were for the pre-trial motions hearing we

14   had several months ago.  And there are, in terms of sifting

15   through the various cases and, of course, there are many

16   cases that would have gone to trial already and they are

17   awaiting trial, the Court has tried to prioritize starting

18   with the most discreet cases, almost as test cases, that

19   involve detained defendants, especially those defendants who

20   have been detained the longest to do those as early as

21   possible and essentially get some of those early test cases,

22   in effect, under our belts.

23             The calendar committee, Chief Judge Howell, Judge

24   Contreras and others have worked to put together,

25   essentially, a coordinated schedule for all of the different

1     cases that we have to deal with.

2             Under the current one, the current notional,
3     internal schedule for all of these cases, this matter, the
4     one we are talking about today, has been pushed back a few
5     weeks, but just a few weeks, to start on May 3rd.
6     Obviously, it was set to go on April 12th, but that is just
7     a few weeks after jury trials will resume, and I think it is
8     fair to say there are other cases that are single-Defendant,
9     more discreet and/or have defendants who have been detained
10    even longer than we have in this case.

11            So I think it is fair to say that things are still
12    a moving target.  There's even discussion about whether
13    March 15th is an appropriate date to resume.  I think it is
14    likely to hold, but the schedule and how these cases all fit
15    together is obviously pretty complex, even dependent upon
16    whether cases plead out or I suppose whether there are cases
17    that need to jump earlier in the queue than they would
18    otherwise be.

19            I do think it is fair to say, though, that because
20    this is a multi-Defendant case and the Court is blocking the
21    week of May 3rd for this case to happen in the ceremonial
22    courtroom, including voir dire and the like, that it's not
23    going to go earlier, that's for sure. And there's, I
24    suppose, a risk that if May 3rd is not a great date for
25    whatever reason that it could slip farther.

1           So having said all of that, the purpose of this
2   call is to inform the parties of where things stand with
3   respect to the trial date that's currently on the calendar
4   to see whether a May 3rd trial date is feasible for the
5   parties.  It's available for me.  I've got it blocked off
6   but, of course, I recognize we have to have lawyers,
7   witnesses and parties available.  And then assuming it is or
8   if it might be but people need to go check, then we can
9   start setting up all of the other dates that need to be
10  aligned before we get to May 3rd.
11          So, Mr. Wasserman -- and I'll just go counsel by
12  counsel -- I understand that this may be taking everybody by
13  surprise, so to speak, but I will just go counsel to
14  counsel.  Do you have any reactions?  Can the Government do
15  a May 3rd trial?  What are your views or what are your
16  reactions?
17          MR. WASSERMAN:  Your Honor, again, this is Steven
18  Wasserman.  I appreciate the Court's update.  As far as the
19  status goes, I can provide, I guess, the following
20  information as I understand it right now is.  I believe the
21  Government has a plea agreement in principle with Theodore
22  B. Douglas.  I provided the paperwork via Mr. Ohm.  Barring
23  any unforeseen issues, I expect that part of the case to
24  dispose of itself hopefully within the next week or two.
25          If that happens, that would leave us with Mr.

1     Williams, who is not detained.

2                THE COURT:  Correct.

3                MR. WASSERMAN:  I don't know where that would put

4     us in the queue as far as trial dates, if that happens,

5     whether that would push us back or what.

6                As far as the May 3rd date, it's likely somebody

7     other than me is going to actually trying this case so I'd

8     have to check as far as scheduling -- I am not aware of any

9     issue for May 3rd, but I don't actually have another

10    attorney assigned to this matter just yet.  So I can either,

11    you know, go on the assumption that May 3rd would be fine

12    that they would find an AUSA that is available that date or,

13    you know, check with supervisors to see, you know, if

14    there's some specific person that would be available to do a

15    trial that day.

16               THE COURT:  Mr. Wasserman, I don't think you need

17    to do that yet and here's why.  Of course, I want to hear

18    from Mr. Ohm about Mr. Douglas' situation and from Mr.

19    Marston.

20               If Mr. Douglas does enter a guilty plea, it makes

21    it easier, perhaps, to do earlier or to hold May 3rd or

22    sometime around there because it becomes a single-Defendant

23    case and can very likely be conducted in a courtroom other

24    than the ceremonial courtroom, at least for everything other

25    than voir dire.  It makes it easier some in some ways to

1       calendar.

2               On the other hand, I think the Court will view it
3       as less of a priority because then, obviously, we are
4       talking about someone who has been released pre-trial and
5       that will likely put some pressure on it to slip behind
6       cases where that's not the case.

7               And so if, as a result of this conference today,
8       it looks likely that Mr. Douglas is going to plead guilty
9       and, in fact, perhaps if we set a plea hearing, then I think
10      what we will need to do is go back to the calendar committee
11      with the new information that this is likely to be a
12      single-Defendant trial for a Defendant who is not detained.
13      We certainly can push for a particular date and to go
14      quickly depending on what Mr. Marston has to say about that.
15      But I think we should not assume that May 3rd will be the
16      date.  I don't think you need to go looking for someone who
17      would be taking over this case to see if they are available
18      on May 3rd because there are enough moving pieces here that
19      May 3rd may very well not be the relevant date.  I just
20      don't know what the alternative will be.

21              MR. WASSERMAN:  Okay.

22              THE COURT:  I cut you off.  I don't know if you
23      had anything else to add or if we should turn perhaps to
24      Mr. Ohm and then to Mr. Marston.

25              MR. WASSERMAN:  I don't have anything else, Your

1       Honor.

2               THE COURT:  Okay.  Thank you.

3               Mr. Ohm, you heard what Mr. Wasserman said about

4       Mr. Douglas' situation.  Do you think it's likely we are

5       going to have a plea here, in which case, at least for

6       planning purposes, I should be thinking of this as a

7       single-Defendant matter?

8               MR. OHM:  Yes, Your Honor.  I received the

9       paperwork this morning.  My intention was to review it with

10      Mr. Douglas by video on Thursday.  Hopefully I can get in

11      for a video visit, and then I will have the paperwork signed

12      and returned to chambers hopefully by the end of the week.

13              THE COURT:  Okay.  Thank you.

14              MR. OHM:  One thing I want to add before Mr.

15      Marston goes.  Based upon the possibility of Mr. Douglas

16      testifying on behalf of Mr. Williams, should he decide to do

17      that, it's going to be our position that he have fifth

18      amendment right until sentencing.  To the extent the Court

19      is figuring out scheduling, I just wanted to throw that out

20      there.

21              THE COURT:  Thank you.  Yes.  Understood.  It is a

22      thought I had as well.  Mr. Marston?

23              MR. MARSTON:  Yes, thank you, Your Honor.

24              I think I would have to talk to my client.  There

25      are several moving pieces in play, it seems to me.  I am

1     available May 3rd.  I don't think in light of the plea

2     timing that, you know, this will drive the case in many

3     different directions potentially.  I don't know that we

4     could be ready earlier.  I will have to see if my client

5     wants to push for an earlier -- you know, the earliest

6     possible date, that's been our position in the past, I

7     think.

8              But also, in light of the potential plea, the

9     potential post-sentencing testimony of the co-defendant, I

10    think there is a great likelihood we would rather wait for a

11    later time that works better for the Court and for our

12    potential witnesses.

13             THE COURT:  Why don't we do the following.  Just

14    for people's awareness, on the notional trial calendar that

15    we are discussing internally, it does have open dates after

16    May 3rd but not, you know, not months later.  But end of

17    May, they are largely trying to do these things where we

18    have a Monday voir dire for one case in the ceremonial

19    courtroom and then a Tuesday one and potentially another

20    Wednesday one.

21             So, for example, the date around May 31st appears

22    available.  There's a week there available next week, the

23    June 7th week, June 28th.  So it's not as if May 3rd ends up

24    not working that it suddenly has to shift necessarily four

25    or five months.  I think there's a possibility that we can

1      fit something in if we decide to go that course, it would
2      only be a few weeks after the 3rd.
3                As for before the 3rd, if that was for whatever
4      reason something the folks would want, that seems harder to
5      me, if possible.  And I'm saying harder in the sense of
6      coordinating with all of the other cases just because that's
7      relatively soon and there is the interest in trying to do
8      just a few cases early on with the detained Defendant.  And
9      I'm just not sure whether Mr. Williams -- the Court would
10     view Mr. Williams' case as one that should go early.
11               Having said all of that, I think the following
12     makes sense, but I am happy to hear from everyone, if you
13     don't think so.  Obviously, the guilty plea here --
14     potential guilty plea, will have a potential effect on this
15     case in a number of different ways.  Obviously, it makes the
16     case a single-Defendant case, as we've been talking about,
17     non-detained, for all of the COVID-related scheduling
18     reasons.  There is also the question of Mr. Douglas'
19     testimony that everyone has raised.  It sounds at least
20     possible that we will have an executed guilty plea and
21     paperwork this week.
22               I think probably the most prudent course is to
23     allow that to happen this week.  Hopefully it does or if it
24     doesn't, it is what it is.  And then to get on the phone
25     next week and discuss the implications, if there is one, or

1     if for whatever reason there isn't one, and to just at least

2     understand where things stand.

3             So my thought is to do a call on March 9th or

4     10th.  If the paperwork is received on the 5th, that gives

5     everyone a few days to digest it and think about how it

6     effects the case and the scheduling and the like.  It also

7     allows for a few more days in case the paperwork isn't

8     executed on the 4th for it to possibly be worked through on

9     the 10th or 9th.  At least we can be discussing next steps

10    in light of what seems to be a likely next event.

11            Does that work for everyone at least notionally

12    and then we can talk about specific timing?

13            MR. WASSERMAN:  Your Honor, this is Steve

14    Wasserman.  Just so we are clear, you are anticipating

15    having another call concerning scheduling prior to, actually

16    taking Mr. Douglas' plea?

17            THE COURT:  Yes.  Yes.  I mean, I suppose I could

18    combine those things, but what I wanted to make sure we

19    scheduled today was a call post the plea, assuming it is

20    going to happen, or post the date where we think there is

21    going to be an executed plea document where we can talk

22    through the implication for the case generally.  If you

23    think it makes sense to just do the plea at the same time,

24    that's fine with me.

25            My main concern is that we not lose time in

1     thinking about the ark of the case generally, such that

2     spaces start filling up in this overall trial schedule.

3              If we have an executed plea agreement, we can take

4     the plea on the 9th or 10th or we can also wait.  I am

5     concerned about talking about how this case is affected by

6     the plea agreement as soon as possible, so that if it's

7     decided, for example, that, you know, Mr. Marston wants a

8     few extra weeks beyond May 3rd, but not much longer, I can

9     go back and reserve a spot for late May or early June.

10    Because I am concerned if we don't do that quickly, those

11    spots are going to start filling up.  That's what I had in

12    mind.  But if the parties think that we can combine that

13    discussion and the taking of the plea together, that is just

14    fine by me as well.

15             MR. WASSERMAN:  As far as the Government's

16    concerned, I am happy to do it either way.  You know, if the

17    plea paperwork is executed on Friday or Monday, you know, I

18    am either happy to do the plea on the same day as the call

19    or if it's easier to do it afterwards.  If the plea

20    paperwork is executed then, you know, it would appear

21    likely, you know, that the plea will actually go through.

22             So I am flexible if Mr. Ohm wants to do it the

23    same day as the 9th.  I am available the 9th, next week.  I

24    don't have anything else scheduled that day.  I can do a

25    call for a plea and status, if that's how the parties want

1      to proceed.
2              THE COURT:  Mr. Ohm, do you have a view?
3              MR. OHM:  My only reluctance is the jail in terms
4      of short turnaround time.  My intention is to get the
5      paperwork back to the Court by Friday, and I will -- once I
6      get that, I think we will be ready to go for any time next
7      week.
8              I guess we could set it that way, and if I don't
9      have the paperwork back, I can let the Court know at the
10     hearing and we can reset another plea date.
11             THE COURT:  All right.  Counsel, I will be back
12     with you in one second.
13             (Break.)
14             THE COURT:  Mr. Marston, what about the following
15     and, I guess, everyone, what if we were to set this matter
16     over for two purposes on March 10th at 3:00 p.m. or sometime
17     in the afternoon that is available for everyone, where we
18     take up both Mr. Douglas' potential guilty plea and the
19     question of the overall scheduling of the case depending on
20     where we are.
21             Obviously, if for whatever reason the paperwork
22     isn't completed or something else has to happen with the
23     plea and we can't do the plea that day, that's okay, we will
24     talk about the schedule, assuming that we have enough
25     concrete information about the plea to proceed.  Does that

1       work for you, Mr. Marston, and everyone else?
2                MR. MARSTON:  This is Mr. Marston.  Yes, Your
3       Honor, that sounds great.
4                THE COURT:  Okay.  Mr. Wasserman, is that okay?
5                MR. WASSERMAN:  Yes, Your Honor.
6                THE COURT:  Mr. Ohm?
7                MR. OHM:  Yes.
8                THE COURT:  Is 3:00 p.m. acceptable to everyone?
9                MR. WASSERMAN:  Fine for the Government.
10               MR. MARSTON:  It's good for Mr. Williams.
11               MR. OHM:  It's good for Theodore B. Douglas as
12      long as the jail is available and the Court is allowing us
13      to do it by video.
14               THE COURT:  So, first I do think it's appropriate
15      to proceed here by video.  First, I guess we need to confirm
16      that 3:00 p.m. is available from the jail.  Ms. Lesley, I
17      don't know if you have that calendar available?
18               COURTROOM DEPUTY:  I am looking right now, Judge.
19      Give me one moment.  At this moment 3:00 is not available on
20      the 10th.  However, there is a hearing scheduled for, I
21      guess it might be tentatively scheduled before another judge
22      it has a question mark.  I have to check with my supervisor
23      to find out whether or not that is solidified.
24               THE COURT:  Ms. Lesley, is there another time on
25      the 10th that is available?

1    COURTROOM DEPUTY:  Hold on.  There are four rooms.
2    I have to check.  Give me one second to look at all four
3    rooms.  As of right now it looks like 9:00 on the 10th is
4    available.
5            MR. OHM:  Your Honor, I have an in-person
6    suppression hearing at 9:30.  I don't think I can do that.
7            COURTROOM DEPUTY:  It's hard to schedule so soon
8    to the date.
9            THE COURT:  Why don't we do the following.  I
10   think this is probably the most efficient way to proceed.
11   My intent is to have a hearing next week on the 10th or the
12   11th, somewhere around there, where we both take Mr.
13   Douglas' plea by video and discuss next steps and
14   scheduling.
15           Why don't we have Ms. Lesley work with the jail
16   just to see what time would be available, and then she can
17   communicate with counsel about what time makes sense.  See
18   if everyone is available.  And then we'll just do it then,
19   unless, Ms. Lesley, you already have a potential alternative
20   time right now?
21           COURTROOM DEPUTY:  No, Your Honor.  But I will
22   definitely reach out as soon as this call is over to find
23   out.  I see another time that has question marks next to it.
24   So there are two -- let me tell you what that time is.  So
25   there are two questionable 2:00 availabilities.  I will have

1    to reach out to my supervisor to see the status on those.
2    They are tentatively scheduled before other judges, but
3    there are question marks.  So I have to find out.
4                THE COURT:  There is nothing magic to the 10th.
5    It could be the 9th or the 11th.  So that's what we will do,
6    Counsel.  We will hold the hearing next week to deal with
7    those two separate but obviously realted topics.  It will be
8    by video for purposes of taking the plea, and we will just
9    stay on the video for the rest of the discussion.
10               Ms. Lesley will be in touch with you directly
11   about the scheduling possibilities based on what she learns
12   from the jail, and then once we land on a time and day, we
13   will enter an order to that effect.
14               Assuming that makes sense, is there anything else
15   we should talk about this morning, Counsel?  Mr. Wasserman?
16               MR. WASSERMAN:  Nothing for the Government, Your
17   Honor.
18               THE COURT:  Thank you.  Mr. Ohm?
19               MR. OHM:  No, Your Honor.
20               THE COURT:  Mr. Marston?
21               MR. MARSTON:  No, Your Honor.
22               THE COURT:  Okay.  Thank you all.  We will speak
23   next week.
24               MR. WASSERMAN:  Thank you, Your Honor.
25               MR. MARSTON:  Thank you.

1       (Proceedings concluded at 11:00 a.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

(Proceedings concluded at 11:00 a.m.)

# **C E R T I F I C A T E**

I, **Lorraine T. Herman, Official Court Reporter,** certify that the foregoing is a true and correct transcript of the record of proceedings in the above-entitled matter.

**Please Note:** This hearing occurred during the COVID-19 pandemic and is therefore subject to the technological limitations of court reporting remotely.

_____**July 15, 2021**_____        ___**/s/**_____
       **DATE**                              **Lorraine T. Herman**