```
1                    IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLUMBIA
2

3      UNITED STATES OF AMERICA,
                                            CR Action
4               Plaintiff,                  No. 1:20-121

5          vs.                              Washington, DC
                                            September 18, 2020
6      TAVONTE WILLIAMS
       THEODORE B. DOUGLAS,                 10:33 a.m.
7
                    Defendants.
8
                    TRANSCRIPT OF TELEPHONE STATUS CONFERENCE
9                BEFORE THE HONORABLE CARL J. NICHOLS
                        UNITED STATES DISTRICT JUDGE
10

11

12     APPEARANCES:

13     For the Plaintiff:      STEVEN B. WASSERMAN
                               U.S. ATTORNEY'S OFFICE FOR D.C.
14                             555 Fourth Street, NW
                               Washington, DC 20530
15                             (202) 252-7719

16     For T. Williams:       JOHN PETER MARSTON
                               FOLEY HOAG, LLP
17                             1717 K Street, NW
                               Washington, DC 20006
18                             (202) 261-7321

19     For T. Douglas:        EUGENE OHM
                               FEDERAL PUBLIC DEFENDER FOR D.C.
20                             625 Indiana Avenue, NW, Suite 550
                               Washington, DC 20004
21                             (202) 208-7500

22
       Reported By:      LORRAINE T. HERMAN, RPR, CRC
23                       Official Court Reporter
                         U.S. District & Bankruptcy Courts
24                       333 Constitution Avenue, NW
                         Room 6720
25                       Washington, DC 20001
```

1                    **P R O C E E D I N G S**

2              THE COURT:  Good morning.  This is Judge Nichols.

3    Ms. Lesley, could you please call this matter.

4              COURTROOM DEPUTY:  Good morning, Your Honor.  Yes.

5              This is criminal case year 2020-121, United States

6    of America versus Tavonte Williams, Defendant No. 1 and

7    Theodore B. Douglas, Defendant No. 2.  Both are present on

8    the line.

9              Counsel, please introduce yourself for the record

10   beginning with the Government.

11             MR. WASSERMAN:  Good morning, Your Honor.  Steven

12   Wasserman for the United States.

13             THE COURT:  Good morning, Mr. Wasserman.

14             MR. MARSTON:  John Martson for Mr. Williams.

15             THE COURT:  Good morning, Mr. Martson.

16             MR. OHM:  Eugene Ohm on behalf of Mr. Douglas.

17             THE COURT:  Good morning, Mr. Ohm.  Anyone else on

18   the line for any of the parties?

19             [No response]

20             THE DEFENDANT:  Tavonte Williams is present.

21             THE COURT:  I believe both Mr. Williams and

22   Mr. Douglas are present; is that correct?

23             [No response]

24             So I believe I understand the parties' respective

25   positions, but let me begin first with this question to you,

1    Mr. Wasserman, and I would also like to hear the positions

2    of the Defendants on it.

3            Start with the proposition or the question, is a

4    hearing necessary on these motions at all?  Putting aside

5    video or in person.

6            MR. WASSERMAN:  Your Honor, my position is there

7    isn't.  As I stated in my motion in response to Defendant

8    Douglas' Motion to Suppress Tangible Evidence, I don't

9    believe a sufficient basis has been set forth in that motion

10   warranting the hearing.

11           I've gone through this with Mr. Ohm previously

12   before Chief Judge Howell where he has filed a similar bare

13   bones motion and Chief Judge Howell ordered him to

14   supplement his motion because it didn't set forth the basis

15   to warrant an evidentiary hearing.

16           I mean, I believe this is a tactic by Mr. Ohm to

17   essentially make the Government make his arguments for him,

18   and then he can file his reply, and we don't have an

19   opportunity to respond in writing with sufficient time

20   before a hearing so that he can, essentially, make whatever

21   arguments that he should have made in his initial motion.

22           So at this present time on the record, I do not

23   see a basis for an evidentiary hearing.

24           THE COURT:  Thank you.

25           Mr. Martson, what is your view?

1          MR. MARSTON:  Thank you, Your Honor.
2    Mr. Williams, of course, is not a party to that Motion to
3    Suppress Evidence, which I think is the only motion so far
4    addressed by Mr. Wasserman.

5          We filed a Motion to Suppress Identification and a
6    Motion to Sever.  I don't believe the Motion to Sever
7    requires an evidentiary hearing.  I do believe that we raise
8    sufficient arguments and facts on the Motion to Suppress
9    Identification, which Mr. Douglas also -- I won't say joined
10   in but did subsequently file also a separate Motion to
11   Suppress Identification in his case, that motion we would be
12   asking for an evidentiary hearing.

13         And I'll also say the only other motion out there
14   is the 404(b) motion.  I don't think that requires an
15   evidentiary hearing, of course.

16         The only thing I would say -- and I apologize to
17   everybody.  I am glad I realized it when I did, but I do
18   apologize for creating this fiasco of in-person hearing
19   versus not.  I asked for in-person and now am potentially
20   not able to come to it.

21         I will say Mayor Bowser is going to issue a new
22   order or whatever it is called on Monday, which based on the
23   dropping case rates, you know, it's possible, I would be
24   free to travel to D.C.  I think, frankly, I have been
25   essentially under quarantine and it would be safe for me to

1      do, but there is a line drawn and obviously I would have to

2      obey the orders of the given jurisdiction.

3             I guess my request would be that I -- you know, I

4      check the order on Monday from the Mayor, and if the Mayor's

5      order would preclude me from appearing, then I alert the

6      Court and the parties, and Mr. Williams' motions to the

7      extent they require an evidentiary hearing would be, you

8      know, delayed, which I think the Government is fine with.

9      If I am able to come, then we come and have the hearing and

10     then nobody has a problem.

11            MR. WASSERMAN:  Well, let me just clarify that the

12     Government is not fine with that.  As I understand, what we

13     are arguing over is if there is going to be an evidentiary

14     hearing, whether there are going to be two separate

15     evidentiary hearings.  So I'm not amenable to that for

16     reasons that I will provide if the Court, you know, wants me

17     to go into detail.  I just want to clarify that.

18            THE COURT:  I understand the Government's position

19     there.  I'd like to hear -- and Mr. Marston, believe me, I

20     understand the complications about travel to states that

21     suddenly appear on D.C.'s list of high-risk states and the

22     bright line that is drawn and the implications of that

23     having myself traveled to one such state at a time when it

24     then appeared on the list.  So I don't think this is any

25     fault of your own.  I just want to work through the

1     implications of your potential unavailability.

2               Having said that, I want to go back to my first

3     question.  Mr. Ohm, is an in-person hearing actually

4     necessary here?

5               MR. OHM:  Is the Court referring to the Fourth

6     Amendment issue or the Fifth Amendment issue?

7               THE COURT:  I have not dug into all of the motions

8     but why don't you answer both.

9               MR. OHM:  Sure.  Yes, Your Honor.

10              In my view it is.  The Government obviously has to

11    -- unless the Court wants to grant our suppression motion on

12    the papers, but the Government hasn't defended the

13    constitutionality of the law enforcement officer's conduct.

14              It begins with an undercover officer who makes

15    assertions about information that it claimed it seized

16    without -- and some of that information is already

17    uncorroborated by the subsequent event.  The Government, I

18    think, relies heavily on the Fourth Amendment motion on the

19    idea that that undercover officer sort of exchanges money

20    but the -- again, the facts of the case they will reveal

21    that Mr. Williams was searched very, very soon after.  I

22    want to say less than a couple minutes after the undercover

23    claimed that it saw what it saw; that Mr. Williams had no

24    money in his possession.  Those are important facts.  I

25    think at this point we still don't know where the undercover

1    was situated when there were obstructions.  Those are

2    factual points that the Court needs to hear.

3            The Government makes some claims in his motion

4    that I don't think are supported by the facts, and I think

5    it would be helpful for the Court to hear testimony on.  For

6    example, the Government describes officer Poupart's conduct

7    as a frisk.  I think that the body camera clearly

8    demonstrates it is beyond a frisk.  It was a pat down.  You

9    can see Officer Poupart manipulating what he claims to have

10   seen.

11           I also think it would be helpful for the Court to

12   see the pieces of evidence that Officer Poupart claims he

13   was feeling as he was manipulating those items in order to

14   justify his later -- in our view, the frisk, the way that it

15   was conducted was a search in and of itself, and it was a

16   full-blown search shortly thereafter.

17           There is also the factual assertion that the

18   Government makes that Officer Poupart says he immediately

19   recognized it could be a firearm.  I think that Officer

20   Poupart needs to be questioned as to why if it was his state

21   of mind he then reacted by asking his supervisor whether he

22   could conduct a search, and did not actually say at the time

23   contemporaneously that he felt what he knew to be a firearm.

24   These are all unanswered questions.

25           Frankly, I think the Court can make inferences

1    based on the body-worn camera footage, and it is sufficient

2    to suppress this evidence.  Certainly, I don't think we are

3    near a position where the Court can say an evidentiary

4    hearing isn't required to deny the motion.

5                THE COURT:  Let's assume that a hearing, an

6    in-person evidentiary hearing, is necessary.  You know from

7    the current standing order there will be no jury trial in

8    this or any other matter until late November at the

9    earliest.  And for this case, as a multi-Defendant case,

10   assuming it is going to trial, it will stand behind, very

11   likely, other multi-Defendant cases that have to occur in

12   the ceremonial courtroom.  There is obviously, as you can

13   imagine, a queue of jury trials forming or already been

14   formed and added to.  So it seems to me that the absolute

15   best case scenario for this case, for purposes of trial

16   date, would be late November and much more likely later than

17   that.

18                So Mr. Ohm, what is the harm in potentially -- I

19   am exploring these options because it is Friday.  We won't

20   know until Monday what Mr. Martson's situation is.  I'd

21   rather not do seriatim calls, but assume for present

22   purposes Mr. Martson is not able to appear on the 24th but

23   could appear 12 or 13 days thereafter.  What is the harm in

24   holding this hearing over two weeks doing the kind of

25   evidentiary hearing that you just argued should occur, doing

1      it once with everyone present and still being something like

2      a month and a half before the earliest plausible or possible

3      trial date, where the most likely trial date is

4      substantially later?

5              MR. OHM:  Your Honor, I think that is an easier

6      one.  It is a dispositive motion.  It would mean the two

7      weeks earlier where the Court could grant our motion, and if

8      the Court does grant our motion then the case would have to

9      be dismissed.  I think Mr. Wasserman would agree to that.

10             I would note that Mr. Douglas is detained in this

11     case and part of the sort of unusual situation that's unique

12     to D.C. but one that is sort of uninherently unfair to

13     Mr. Douglas.  He is accruing time in this case, but if he

14     succeeds either on the Motion to Suppress or on the trial,

15     he won't have any credit for this time he's been

16     incarcerated.  There is a parole detainer against him.  He

17     was on supervised release, but that detainer has an issue

18     that is something that is done understanding that he will

19     not be accruing any time in this matter.

20             So the time that he is -- that he would have to

21     wait for a suppression hearing, I think it would be

22     reasonable to infer that it would take the Court additional

23     time to make an additional ruling on the suppression matter,

24     and that it would mean additional incarceration for

25     Mr. Douglas for an occasion we feel we should be able to

1    dispose of somewhat quickly and simply.

2            THE COURT:  Thank you.  Mr. Wasserman, do you have

3    a response to that?

4            MR. WASSERMAN:  I do, Your Honor.  I have a couple

5    of points.

6            One is, there is a parole detainer based upon the

7    2015 felony drug case that Mr. Douglas had been on fugitive

8    status for for five years.

9            So even if the Court granted the motion, which I

10   certainly at this point, and don't believe Mr. Ohm at this

11   point, has any idea what the disposition of that motion will

12   be.  Even if it was granted and the Government had to

13   dismiss the case, one, there's a process by which I need to,

14   if the Defendant's motion were granted, this process I have

15   to go through in my office to determine whether we would

16   appeal a granting of that motion.  So a dismissal would not

17   be coming right away.

18           Second, because of the parole detainer, the

19   Defendant is not going anywhere any time soon.  So there is

20   no prejudice to Mr. Douglas, even if the Court granted the

21   Motion to Suppress and the Government ultimately dismissed

22   the case, say, a week later.  And so, you know, this idea

23   that somehow Mr. Douglas would be released from prison

24   immediately after a granting of the suppression motion is

25   just not accurate.

1            Requiring the Government to do two hearings,

2      evidentiary hearings, one, is a complete waste of time; two,

3      it unnecessarily exposes any number of people to risk of

4      infection during a pandemic, courtroom staff, marshals,

5      counsel, Your Honor.  The whole reason we are here having

6      this hearing is because we are in the middle of a pandemic

7      and there is an order requiring quarantine.  Even, quite

8      frankly, in normal situations where we didn't have this, it

9      would take, I would think, a pretty compelling reason for

10     the Court to break this down into two separate evidentiary

11     hearings.

12            And I would note that the notion that defense

13     counsel should have an opportunity to cross examine at least

14     one of the Government's witnesses on the same set of facts

15     twice is ridiculous and unfair to the Government.

16            And then the additional thing is that I don't

17     know, obviously, what D.C. is going to do, vis-a-vis other

18     states and other requirements of quarantine, but the fact

19     that the numbers are declining here in the district isn't

20     necessarily going to impact what decisions are made about

21     quarantining for people coming from other states; that's

22     going to presumably depend on what the grade of infection is

23     in those states.  I have no idea what the status is in

24     Minnesota.

25            The problem with me waiting until Monday is, I am

1    going to have to meet with my witnesses in person, and I'm

2    going to have to do that in advance of any hearing, if it

3    were to occur on September 24th.  And if it turned out that

4    we didn't have a hearing on September 24th and I've got to

5    bring these witnesses in again, I'd like to have some degree

6    of certainty today because, again, I am not trying to make

7    people do in-person meetings any more than we have to.

8            MR. MARSTON:  Your Honor, let me just address that

9    very last point, because I do believe it is worth -- I mean,

10   it may be -- who knows if it is a long shot or not.  I do

11   believe it is worth waiting until Monday because the Mayor's

12   line is 10 cases per 100,000 residents on a seven-day

13   rolling average, and it has to be less than 10 in the

14   jurisdiction of travel.  Right now the case -- right now it

15   has fallen to 10, and they update it daily, and the Mayor is

16   coming out with her next pronouncement on Monday.  It seems

17   at least possible that it would fall a little bit further

18   and then the Mayor would remove Minnesota from the list.

19           THE COURT:  Yes.  I understood your point earlier

20   to be about the Minnesota rate of infections.  I am pretty

21   familiar with how the Mayor's office does these

22   calculations.

23           It seems to me that this is where we are.  There

24   is a possibility that you may not have any self-quarantine

25   obligation as of Monday, but Mr. Wasserman's argument is

1    that then leaves him -- if he should be waiting until then

2    to start working with his witnesses -- that only leaves him

3    two days before the hearing, and that's not an unreasonable

4    position.

5              Let me ask you, Mr. Wasserman.

6              MR. MARSTON:  Your Honor, if I may interject, I

7    certainly know Mr. Wasserman and have for a long time.

8    Although I have sat in his precise shoes, it actually

9    doesn't take that long to prepare for a hearing of this

10   nature.

11             THE COURT:  I am not suggesting that it's a

12   72-hour proposition, but he wouldn't know until Monday

13   afternoon whether this hearing is on or not for Thursday.

14   But let me ask him the question, Why couldn't you,

15   Mr. Wasserman, adequately prepare between Monday afternoon

16   and Thursday morning?

17             MR. WASSERMAN:  I mean right now, Your Honor, my

18   witnesses are scheduled to come in Monday morning.  I mean,

19   you know, quite frankly, I need to look at my schedule.  If

20   I knew I didn't have anything else to do on Monday --

21             THE COURT:  Let me articulate a couple points from

22   my perspective.  One, I think we should do this hearing in

23   person.  Two, I don't think we should separate, bifurcate or

24   otherwise do more than one hearing.  My view is there should

25   be one hearing and one hearing only.

1    Three, I don't think there is substantial

2    prejudice to waiting two weeks to do the hearing, though

3    there may be a little bit.  And as a result, it seems to me

4    that the ideal outcome here -- well, let me make one more

5    point.  There is no magic, really, to September 24th.  The

6    hearing date that was set when the briefing scheduling on

7    the motions was entered but, you know, I could have decided

8    I wanted more time with the papers before the hearing.  So

9    it's not as if the September 24th date is the most magic of

10    dates.

11    Having said all of that, I think it would be best

12    to do the hearing on the 24th, if Mr. Marston is available.

13    We won't know that until Monday.  So it seems to me that the

14    ideal world is one in which we keep the 24th on the

15    calendar.  We decide Monday afternoon whether it's the 24th

16    or a later date, and that later date would be one where

17    Mr. Marston is available.

18    So I am not particularly interested in

19    entertaining other options.  It's either that, that is to

20    say, keep the 24th on the calendar and decide on Monday

21    whether we are continuing it on the 24th or moving it to a

22    later day.  The other option is just move it now to a later

23    date.  I believe the second option is not as good as the

24    first.  And the only reason not to pick the first, seems to

25    me, Mr. Wasserman, is your correctly raising the question of

1       getting ready for the hearing.

2                 MR. WASSERMAN:  Your Honor, if I could just add

3       one other thing.  You know, Mr. Ohm made several arguments

4       concerning the merits of his motion, all of which he had

5       available to him months ago.  None of those arguments are in

6       the text of his motion and that is by design.  So I don't

7       know whether he has any intention of filing a reply today,

8       because that's when they are due, to the motions.  But I

9       would anticipate that he is going to file a fairly detailed

10      reply to my opposition, and that should have been done in

11      the initial motion.  So what he does is he --

12                THE COURT:  Mr. Wasserman, let me interrupt.  I

13      get it.  All of that would have been true whether

14      Mr. Marston couldn't travel or not or could appear on

15      Thursday or not and even if it wasn't an issue with

16      Mr. Marston, you would have had to be preparing for those

17      arguments, and you are still able to do so.

18                MR. WASSERMAN:  I can't do it in writing, Your

19      Honor.  I have to do this on the fly.  I don't know what

20      cases he may be citing that -- I am just -- I understand the

21      Court's point, it's just -- this is not -- the Court

22      schedules the briefing schedule in the manner that it does

23      for a reason, to make sure that the parties have ample

24      opportunity to file wholesome pleadings to benefit the Court

25      and to make sure the parties are aware of each other's

1       arguments.  Mr. Ohm consistently flouts that process.

2              THE COURT:  Mr. Wasserman, with respect, I get

3       your point, but that is an issue that really is independent

4       of Mr. Marston's travel, because it is an issue we would

5       have to confront if the hearing was on Thursday anyway, if

6       we knew today that Minnesota was off the list.

7              And it may be that there will be consequences for

8       Mr. Ohm and his client for having sandbagged you in your

9       theory.  I am not saying that's happened.  I am just saying

10      if I were to agree with that, there would be consequences

11      for having waited to make arguments until later.

12             Other than your preparation for the hearing with

13      the potential witnesses next week after waiting until

14      Monday, other than that, what is the harm to you of waiting

15      until Monday?

16             MR. WASSERMAN:  Your Honor, I understand where the

17      Court is going with this.  The only thing I would add at

18      this point is just, do we actually know that -- I mean, what

19      if they don't do this until late Monday afternoon or after

20      hours or they just don't -- I don't know how efficient the

21      Mayor's office is in making these determinations.  According

22      to Mr. Marston, and I haven't looked at it, Monday is

23      supposed to be the day that they update the list.  Assuming

24      it happens at some point early in the day, but what do we do

25      if it's not until, essentially, Tuesday or -- at some point

1    I have to have some degree of certainty of what is going to

2    happen.

3                    THE COURT:  I've paid a fair amount of attention

4    to this and the list is typically published sometime during

5    the day.  I wouldn't say, in my experience, there's been a

6    consistent time, but let's assume hypothetically that the

7    list is published, the new list of high-risk states for the

8    self-quarantining, let's say it was published at 5:00 on

9    Monday.  So we know at 5:00 on Monday that we are on or not

10   for Thursday.  Why is that too late?

11                   MR. WASSERMAN:  It just kicks my prep off a day.

12   I understand what the Court is saying.  I will prepare as

13   best I can with that time in mind if that's, you know, how

14   the Court wants to proceed.  I've got to check with the

15   witnesses.  I assume they are available.  I'll do the best

16   that I can.

17                   THE COURT:  That is, in fact, what we are going to

18   do.  I understand the complications this gives the

19   Government.  Having said that, I've rejected all of the

20   Defendant's alternative proposals here.  So we are doing a

21   single evidentiary hearing, which is, I think, other than

22   obviously denying the motions, the defense motion on their

23   face, I think is what the Government wants as well.

24                   So what we are going to do is we are going to keep

25   the September 24th hearing date.  We will work through

1   exactly how it will occur in person.  The last thing we

2   could do, I suppose.  And this would, again, require people

3   to get out their calendars.  And that is to think about

4   whether the hearing should be in the afternoon, which would

5   give Mr. Wasserman an extra half a day, it's at 10:00 a.m.

6   Does anybody have an objection to moving it to 2 or 3 in the

7   afternoon?

8           MR. MARSTON:  Mr. Wasserman and I, I believe, have

9   a short status in another matter at 2:00.  Although I think

10  knowing what that is, it is possible that could be moved and

11  thankfully it involves Mr. Wasserman, who is on the phone.

12          MR. OHM:  I don't have an objection to that, Your

13  Honor.

14          THE COURT:  Mr. Wasserman, what do you think about

15  moving this to the afternoon?  I think we could work around

16  this.  Mr. Wasserman, you may be muted.

17          MR. WASSERMAN:  I'm sorry.  You are right.  I was

18  muted.

19          Yeah, that's fine.  We can do the afternoon.  As

20  Mr. Marston mentioned, there is what I believe will be a

21  short status hearing at 2:00 assuming, of course, that that

22  goes off on time.  It's in magistrate court, which always

23  gives me a little bit of concern.  What time had the Court

24  proposed in the afternoon?

25          THE COURT:  I was thinking 2:00 or --

1    MR. WASSERMAN:  Your Honor, you know what, on

2    second thought, I mean, it's not going to make much of a

3    difference whether I have the morning on the 24th.  So I am

4    fine with just leaving it at 10:00.  It's not going to make

5    a huge difference.

6    THE COURT:  Okay.  We will just do that.

7    Let's do this, the hearing remains for now 10:00

8    a.m. on September 24th.  Mr. Marston will notify all counsel

9    and Ms. Lesley as soon as he becomes aware of whether he is

10   able, under the D.C. self-quarantine rules, to appear on the

11   24th.  I expect that that will be sometime Monday,

12   obviously, the earlier the better.

13   In any event that we have not heard -- I am not

14   suggesting this will be Mr. Marston's fault of course, but

15   in the event D.C. has not published a new list by 5:00 or so

16   on Monday, I will then set a new hearing date because

17   there's a point at which we just can't wait anymore.  I

18   think it is appropriate to wait until about 5:00 p.m.

19   Any questions about that course of conduct?  I

20   know there are a lot of arguments that have been made, but

21   any questions about how I intend to proceed over the next

22   two business days?

23   MR. WASSERMAN:  None for the Government, Your

24   Honor.

25   THE COURT:  Thank you, Mr. Wasserman.

1         MR. MARSTON:  None for Mr. Williams.

2         THE COURT:  Thank you, Mr. Marston.

3         MR. OHM:  Nor Mr. Douglas, Your Honor.

4         THE COURT:  Thank you, Mr. Ohm.

5         We will wait to hear from Mr. Marston on Monday,

6    and then we will either have our hearing on September 24th,

7    at 10:00 a.m. in person, details to be worked out in terms

8    of the courtroom and the like, or we will hold that hearing

9    some period thereafter.

10        Have a nice weekend and I will hear from you on

11   Monday.

12        MR. WASSERMAN:  Thank you, Your Honor.

13        MR. MARSTON:  Thank you, Your Honor.

14        MR. OHM:  Thank you, Your Honor.

15        MR. OHM:  I still had a few things I needed to

16   discuss.

17        CLERK:  Okay.  I will get the Judge.

18        (Short break.)

19        THE COURT:  This is Judge Nicoles.  Hazards of

20   doing these things by telephone.  I thought we were done,

21   and as I was hanging up it sounded like, Mr. Ohm, you had

22   something you wanted to raise?

23        MR. OHM:  Yes, Your Honor.  I apologize.  I wasn't

24   expecting that.

25        I guess, number one, I wanted to -- and it

1    dovetails into number two.  I haven't received a viewing

2    letter.  I haven't had an opportunity to view the evidence

3    in this case yet.

4            I was wondering if the Court -- Mr. Wasserman

5    invited me to come at a time certain, 12:00 on Monday in his

6    office, to view the evidence.  Unfortunately, I am on duty

7    Monday, so I anticipate not being able to do that.

8            What normally happens is the Government issues a

9    viewing letter so that we can go down to evidence control.

10   I asked for it late last month.  I would also like to say

11   that that does contribute to the lack of -- there are

12   certain facts I can't represent because I never viewed the

13   evidence.

14           And I also, you know, Mr. Wasserman made some, to

15   me, some substantial -- I don't know if the Court wants me

16   to respond to that, but I fear he was gaining some momentum

17   with Your Honor in terms of what he characterizes my

18   intentions, and I feel that I have to at least say I would

19   like to address them.

20           THE COURT:  I don' want to hear it this morning.

21   It seems to me that these are issues that can come up

22   substantively during the hearing on the motions.

23           Mr. Wasserman, as to the question of the viewing

24   letter, what is your position on that?

25           MR. WASSERMAN:  Your Honor, there are emails back

1  and forth between Mr. Ohm, myself and my paralegal yesterday

2  where I believe my paralegal advised she gave him another

3  viewing letter where he would be able to schedule it on his

4  own.  So we had to revise the viewing letter.  I expect

5  that's going to be done today.  So he should have a viewing

6  letter where he can request the property at his convenience.

7  MR. OHM:  That's great, Your Honor.  It needs to

8  happen today in that I don't have the ability -- they

9  usually require 72 hours' advance notice.  So, obviously, we

10 are working up against the timeframes.  I appreciate

11 Mr. Wasserman saying that will get to me today.

12 THE COURT:  Mr. Wasserman made arguments about

13 your motion.  He's obviously free to make those arguments in

14 what I consider to be a substantive hearing here.  I don't

15 think you should be concerned at all that I am somehow

16 prejudiced or, you know, I will take his side because of

17 what he argued.  And as I think you heard, it seems to me

18 that a lot of those arguments weren't all that relevant this

19 morning because they would have been arguments he could have

20 made even if Mr. Marston was free to travel.  I really don't

21 think we need to rehash any of those points this morning.

22 The parties can make whatever arguments next Thursday or

23 whenever we hold this hearing.

24 So I will pause before I sign off.  At least as to

25 Mr. Marston's situation, and the hearing, the timing of the

1    hearing, is there any ambiguity or question that the parties

2    have about how we are proceeding until Monday at 5:00 p.m.?

3                 MR. WASSERMAN:  None from the Government, Your

4    Honor.

5                 MR. OHM:  Your Honor, I would just ask the Court

6    if the Government is intending to call Officer Poupart and

7    Detective Jackson.  If they are not, I would ask that the

8    Government make them available to be called in the defense

9    presentation of evidence in the hearing.  It is difficult

10   obtaining officers and the pandemic hasn't made it easier.

11   We don't want to go to their house.  Traditionally, the US

12   Attorneys Office accommodates these requests.  I don't know

13   if they are necessary depending on who Mr. Wasserman intends

14   to call.

15                MR. WASSERMAN:  Your Honor, those are the two

16   witnesses I anticipate having available.

17                MR. OHM:  I also request for the record an updated

18   PPMS information for those witnesses.

19                THE COURT:  Mr. Wasserman?

20                MR. WASSERMAN:  I will also provide that

21   information, Your Honor.

22                THE COURT:  Anything else?

23                MR. OHM:  Not on behalf of Mr. Douglas.

24                THE COURT:  Mr. Wasserman, it sounds like you are

25   set.  Mr. Marston?

1          MR. MARSTON:  Nothing for Mr. Williams.  Thank

2   you.

3          THE COURT:  Thank you, Counsel.  I look forward to

4   hearing from you Monday and seeing you when this hearing

5   gets held or rescheduled.

6          MR. WASSERMAN:  Thank you, Your Honor.

7          MR. MARSTON:  Thank you, Your Honor.

8          MR. OHM:  Thank you, Your Honor.

9          (Hearing concluded at 11:15 a.m.)

1                          **C E R T I F I C A T E**

2

3               I, **Lorraine T. Herman, Official Court**

4    **Reporter,** certify that the foregoing is a true and correct

5    transcript of the record of proceedings in the

6    above-entitled matter.

7

8

9

10     _____**July 15, 2021**_____        ___**/s/**_____
                **DATE**                         **Lorraine T. Herman**
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25